UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YOK
------------------------------------x
UNITED BULK CARRIERS
INTERNATIONAL L.D.A.

      Plaintiff,

  -against-

NORTH CHINA SHIPPING LTD., a/k/a
NORTH CHINA SHIPPING CO. LTD.
a/k/a NORTH CHINA SHIPPING
COMPANY LTD. a/k/a NORTH CHINA
SHIPPING COMPANY LIMITED a/k/a
NORTH CHINA SHIPPING (SINGAPORE)
PTE LTD.

      Defendant.
------------------------------------x

**DECLARATION IN ACCORDANCE WITH 28 U.S.C. § 1746**
08 Civ. 5879 (WHP)

  Wang Chengyu, declares, under penalty of perjury, as follows:

1. I am the director of North China Shipping Company Limited ("NCSC(BVI)"). I reside at Flat 102, Wanshan Garden, Qianhai Street, Nanshan District, Shenzhen, China. I make this declaration in support of NCSC(BVI)'s motion to vacate the attachment obtained by plaintiff of funds in transit through New York intermediary banks.

2. NCSC(BVI) is a corporation formed in the British Virgin Islands more than six years ago on October 4, 2001. A

copy of the Certificate of Incorporation for NCSC(BVI) is attached hereto as Exhibit A.

3. The registered office of NCSC(BVI) is located at P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands.  NCSC(BVI) conducts business through its agent located in Hong Kong.

4. NCSC(BVI)'s agent in Hong Kong is North China Shipping Holdings Co., Ltd.  The address of North China Ship Holdings Co., Ltd., is 3503-10, 35/F, West Tower, Shun Tak Centre, 168-200 Connaught Road Central, Hong Kong.

5. NCSC(BVI) is an active participant in the chartering market and in the freight derivatives market. NCSC (BVI) and Louis Dreyfus Corp. ("Dreyfus") entered into two Freight Forward Agreements ("FFA") dated September 14, 2007, and October 10, 2007.  A copy of the recapitulation of the FFA between NCSC(BVI) and Dreyfus dated September 14, 2007, is attached hereto as Exhibit B.  A copy of the FFA between NCSC(BVI) and Dreyfus dated October 10, 2007, is attached hereto as Exhibit C.

6. Upon settlement of the two FFA's, the sum of $550,000 became due and payable by Dreyfus to NCSC(BVI). Attached hereto as Exhibit D is a copy of the Balance & Transaction Detail sent

by Drefus to NCSC(BVI) in connection with the bank remittance by Dreyfus.

7.      The defendant, North China Shipping Ltd., is not a party to and is not mentioned in either FFA or in the Balance & Transaction Detail. That entity had no participation whatsoever in the FFA's between NCSC(BVI) and Dreyfus.

8.      I have reviewed the Amended Verified Complaint in this action. NCSC(BVI) was not a party to the contract sued upon by plaintiff in its complaint, namely the time charter party dated February 23, 2007, alleged in paragraph 4 of the Complaint, and is in no way indebted to plaintiff.

9.      NCSC(BVI) and defendant, North China Shipping Ltd., are distinct and separate companies. North China Shipping Ltd., is a Bahamian company (see Amended Verified Complaint, ¶ 3), while NCSC(BVI) is company formed in the British Virgin Islands. NCSC(BVI)'s business is separate from the business conducted by North China Shipping Ltd. NCSC(BVI) does not and has never done business in the name of or as North China Shipping Ltd. or North China Shipping Limited.

10.     I understand that plaintiff has attached the settlement remitted by Dreyfus to NCSC(BVI) in connection with the two FFA's in the amount of $550,000, and that it has

refused to release the funds transfer despite the fact that it has been demonstrated to plaintiff that the attached funds belong to NCSC(BVI), and not to the defendant, North China Shipping Ltd.

WHEREFORE, I respectfully pray for an order by the Court vacating the attachment, awarding costs and attorneys' fees to NCSC(BVI), and granting such other and further relief as the Court made deem just and proper in the premises.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Hong Kong on July 30, 2008.

_____
Wang Chengyu

# Exhibit A

TERRITORY OF THE BRITISH VIRGIN ISLANDS
THE INTERNATIONAL BUSINESS COMPANIES ACT
(CAP. 291)

CERTIFICATE OF INCORPORATION (SECTIONS 14 AND 15)

No. 465358

The Registrar of Companies of the British Virgin Islands HEREBY CERTIFIES pursuant to the International Business Companies Act, Cap. 291 that all the requirements of the Act in respect of incorporation having been satisfied,

**North China Shipping Company Limited**

is incorporated in the British Virgin Islands as an International Business Company this 4th day of October, 2001.

Given under my hand and seal at
Road Town, in the Territory of the
British Virgin Islands

REGISTRAR OF COMPANIES

CRTI001G

# Exhibit B



# FFA Trade Confirmation

**To:**  Li Zhen
       Helen Shi

| | |
|---|---|
| **Date and Time** | 14 September 2007 - 09:28:28 |
| **Contract** | 024772 |
| **Buyer** | NORTH CHINA SHIPPING CO. LTD., BVI |
| **Seller** | LOUIS DREYFUS CORP. WILTON, CT |
| **Index Route** | BPI TC - Baltic Panamax Index TC Average of Routes (1A/2A/3A/4) |
| **Trade Quantity** | 366 Days |
| **Contract Month(s)** | January 2008,February 2008,March 2008,April 2008,May 2008,June 2008,July 2008,August 2008,September 2008,October 2008,November 2008,December 2008 |
| **Contract Rate** | US$52500.000 per Day |
| **Contract Value** | US$52500.000 x 366 Days |
| **Settlement Period(s):** | Average of All BPI Index days of the contract month(s) |
| **Settlement Date(s)** | 31 January 2008, 29 February 2008, 31 March 2008, 30 April 2008, 30 May 2008, 30 June 2008, 31 July 2008, 29 August 2008, 30 September 2008, 31 October 2008, 28 November 2008, 24 December 2008 |
| **Contract** | FFABA 2005 |
| **FIS Commission:** | Commission to be paid by both buyer and seller as agreed with FIS |

Formal contracts will be forwarded to you shortly

Kind Regards

FIS Ltd.

# Exhibit C

Case 1:08-cv-05879-WHP   Document 15   Filed 08/08/2008   Page 9 of 18



FFABA 2005 (TM)

**FORWARD FREIGHT AGREEMENT BROKERS ASSOCIATION ('FFABA')**

**FORWARD FREIGHT 'SWAP' AGREEMENT**

Trade Ref  LDC-P-2345   029708

Contract Date   10 October 2007

The purpose of this confirmation is to state the terms and conditions of the forward freight swap agreement entered into between:

**Seller**

**NORTH CHINA SHIPPING CO. LTD., BVI**

Rm. 3503-3511, 35F
WEST TOWER
SHUN TAK CENTRE
168-200 CONNAUGHT ROAD CENTRAL
SHEUNG WAN
HONG KONG
Contact: Li Zhen
Fax: +852 285 070 70
Email: cui@northchina.com.hk

and

**Buyer**

**LOUIS DREYFUS CORP. WILTON, CT**

20 Westport Road
Wilton
CT 06897
USA
Contact: Oliver Jackson
Phone: +1 203-761-4644
Fax: +1 203-761-2365
Email: WLTFRTSWAPS@LDCOMMODITIES.COM

This agreement between the parties as constituted by this confirmation is referred to as the "Agreement"

**Trade Ref**   029708

Until superseded by notice information in subsequent confirmation or other communication, the above addresses are hereby recognized as the correct addresses to which any notification under this Agreement may properly be served.

### 1. Contract Route
As per BPI TC, Baltic Panamax Index TC Average of Routes (1A/2A/3A/4) as defined on the Contract Date including any relevant official forthcoming amendments published at the Contract Date which will become effective prior to the settlement of this Agreement.

### 2. Contract Rate
USD 71000.00 per Day

### 3. Contract Quantity
366 Days

### 4. Contract Months
January 2008, February 2008, March 2008, April 2008, May 2008, June 2008, July 2008, August 2008, September 2008, October 2008, November 2008, December 2008

### 5. Contract Period
Average of All BPI Index days of the contract month(s) up to and including the Settlement date(s)

### 6. Settlement Date
The last Baltic Exchange Index publication day of each Contract Month

### 7. Settlement Rate

(a) The Settlement Rate shall be the average of the rates for the Contract Route(s) published by the Baltic Exchange over the Settlement Period defined as All of the Baltic Exchange publication days of the Contract Month(s) up to and including the Settlement Date.

(b) If for any reason the Baltic Exchange cannot provide any rate required for establishing the Settlement Rate, then the current chairman of the FFABA may be instructed by either party to form a panel comprising of a minimum of three independent brokers (the "Panel") to determine an appropriate rate, which determination will be final and binding on both parties.

(c) Each party shall bear its own costs and expenses in connection with any determination made pursuant to this clause 7.

(d) The parties shall severally indemnify and hold harmless each of the members of the Panel, the Baltic Exchange and its members and the FFABA and its members (the "Indemnified Persons") against all liabilities, actions, demands, costs and expenses incurred by any of them arising directly or indirectly out of or in connection with the formation of the Panel and any determination made by the Panel.

**Trade Ref**   029708

(e) As between the parties, each party shall have a right of contribution against the other party in respect of any indemnity payment made pursuant to the preceding paragraph so that their respective liabilities pursuant to that paragraph shall be equal.

**8. Settlement Sum**

The "Settlement Sum" is the difference between the Contract Rate and the Settlement Rate multiplied by the Contract Quantity. If the Settlement Rate is greater than the Contract Rate, the Seller shall pay the Buyer the Settlement Sum. If the Settlement Rate is less than the Contract Rate, the Buyer shall pay the Seller the Settlement Sum.

**9. Payment Procedure and Obligations**

(a) Payment of the Settlement Sum is due on the later of two (2) London business days after presentation of payee's invoice (with complete payment instructions) or five (5) London business days after the Settlement Date and for this purpose a "London business day" means a day (other than Saturday or Sunday) on which commercial banks are open for business in London). The Settlement Sum will be deemed "paid" when it has been received into the bank account designated by the payee.

(b) Payment of the Settlement Sum shall be made telegraphically, in full, in United States dollars. The cost incurred in effecting payment shall be for the account of the payer. Payment may only be affected directly between parties. The Settlement Sum shall be paid without any deduction or set off unless agreed by the Buyer and Seller in writing.

**10. ISDA Master Agreement**

This Agreement incorporates by reference the 1992 ISDA ® Master Agreement (Multicurrency - Cross Border) (without Schedule) as if it were fully set out in this Agreement and with only the following specific modifications and elections:

(a) Section 2(c)(ii) shall not apply so that a net amount due will be determined in respect of all amounts payable on the same date in the same currency in respect of two or more Transactions;

(b) Seller is the Calculation Agent;

(c) The most current published set of ISDA ® Commodity Definitions and ISDA Definitions shall apply;

(d) Credit Event Upon Merger is applicable to both parties;

(e) For the purposes of payments on Early Termination, Loss will apply and the Second Method will apply;

(f) The Termination Currency is United States dollars;

(g) The Applicable Rate shall mean the one month USD-LIBOR plus 2%, reset daily and compounded monthly ; and

(h) Local Business Day or banking day shall each refer to such a day in London,

(such form, as modified, the "Standard Agreement" and this Agreement, including the incorporated Standard Agreement, shall govern the transaction referred to in and constituted by this Agreement except as expressly modified by this Agreement.

**Trade Ref**     029708

### 11. Capacity and Good Standing

In addition to the representations contained in Section 3 of the Standard Agreement, each party warrants that:

(a) It is duly organized and validly exists under the jurisdiction of its organization or incorporation, and is solvent and in good standing;

(b) It has the power to execute, deliver and perform this Agreement;

(c) All governmental and other consents that are required to have been obtained by it with respect to this Agreement have been obtained and are in full force and effect and all conditions of any such consents have been complied with;

(d) In the event that either party to this Agreement is a person organized under, domiciled in, or having principle place of business in, the United States, each party represents to the other party that it is an "eligible contract participant" as defined in paragraph 1a(12) of the Commodity Exchange Act (7 U.S.C. paragraph 1a(12), as amended).

### 12. Telephone Recording

Each party consents to the recording of telephone conversations in connection with this Agreement.

### 13. Commission

Each of the parties agrees to pay brokers' commission to any broker (a "Broker") as agreed with any Broker.

### 14. Non-Assignability

Except as provided in Section 7 of the Standard Agreement, this Agreement is non-assignable unless otherwise agreed in writing between the parties to this Agreement.

### 15. Principal To Principal

This is a principal to principal agreement with settlement directly between the two parties. Both parties agree that any Broker shall be under no obligation or liability in relation to this Agreement. Both parties agree jointly and severally to indemnify and hold harmless any Broker against all actions, including but not limited to all claims, demands, liabilities, damages, costs and expenses both from the two parties and any third party. Claims, demands, liabilities, damages, costs and expenses suffered or incurred are to be settled directly by or between the two parties.

### 16. Law and Jurisdiction

Pursuant to Section 13(b) of the Standard Agreement, this Agreement shall be governed by and construed in accordance with English law and shall be subject to the exclusive jurisdiction of the High Court of Justice in London, England. The terms of Section 12(a) of the Standard Agreement notwithstanding, proceedings may be validly served upon either party by sending the same by ordinary post and/or by fax to the addresses and/or fax numbers for each party given above.

**Trade Ref**     029708

**17. Entire Agreement**

This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect thereto.

**18. Payment Account Information**

| For Seller: | For Buyer: |
|---|---|
| BANK OF COMMUNICATIONS HONG KONG BRANCH | JP MORGAN CHASE BANK |
| MAYFAIR HONG KONG LTD | 1 Chase Manhattan Plaza, New York, NY 10081 |
| ACC NO: 02753293036118 | ABA#021000021 |
| SWIFT: COMMIIKIII | LOUIS DREYFUS CORPORATION-GRAIN DIVISION |
| CORRESP BANK: BANK OF COMMUNICATIONS, NEW YORK | ACCT NO: 910-2-738623 |
| SWIFT CODE: COMMUS33 | |

**19. Third party rights**

(a) Unless provided to the contrary in this Agreement, a person who is not a party to this Agreement has no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce or enjoy the benefit of any term of this Agreement.

(b) Any Indemnified Person and any Broker shall have the right to enjoy the benefit of and enforce the terms of clause 7(d) in the case of any Indemnified Person and clause 13 in case of any Broker.

(c) Notwithstanding any term of this Agreement, the consent of any person who is not a party to this Agreement is not required to rescind or vary this Agreement.

**20. Inclusion of historical FFAs under Master Agreement**

(a) Unless the parties to this Agreement specifically agree otherwise in writing, this clause 20 shall apply in accordance with its terms.

(b) This clause 20 applies to this Agreement and to every other agreement entered into between parties to this Agreement (and no other persons) before the date of this Agreement:

(i) that is expressly stated to be subject to, or is subject to substantially the same terms as, either the FFABA 2000 terms or the FFABA 2005 terms, (excluding for the avoidance of doubt terms as to the Contract Route(s), Contract Rate, Contract Quantity, Contract Month(s), Contract Period and Settlement Date), with or without amendment; and

(ii) that does not incorporate a clause substantially in the same form as this clause 20.

(c) Each agreement to which this clause 20 applies shall be treated as a confirmation (each a "Confirmation") under a master agreement (the "Master Agreement") constituted by the Standard Agreement as modified by, and in the form as incorporated in, this Agreement pursuant to clause 10 as if such an agreement has been entered into between the parties on the terms of the Master Agreement on the date of the first such Confirmation.

(d) If there is any inconsistency between the provisions of any agreement constituted pursuant to paragraph (c) above

**Trade Ref    029708**

and the agreement constituting a transaction to which this clause 20 applies, the provisions of the agreement constituting the transaction to which this clause 20 applies will prevail for the purposes of the transaction under such agreement.

(e) This clause 20 shall not affect the rights or obligations of the parties under any transaction accrued before the date of this Agreement.

(f) This clause 20 is effective notwithstanding any entire agreement clause or similar provision in any such agreement relevant to any such transaction.

**21. Inclusion of subsequent FFAs under Master Agreement**

(a) Unless the parties to this Agreement specifically agree otherwise in writing, this clause 21 shall apply in accordance with its terms.

(b) This clause 21 applies to every agreement entered into between the parties to this Agreement (and no other persons) after an agreement incorporating a Master Agreement (as defined in and pursuant to a clause substantially in the same form as and equivalent to clause 20) has been entered into by them.

(c) This Agreement shall constitute a Confirmation under the Master Agreement on the terms of clauses 20 (c), (d), (e) and (f) as if they were incorporated and fully set out in this clause 21 with appropriate and necessary modifications for such incorporation.

**Trade Ref**   029708

SELLER

Signed for the ~~Buyer~~ by
[printed name]

Duly authorised signatory

Date .....................

✓ [Company Seal or Stamp]

**Trade Ref**   029708

BUYER

Signed for the ~~Seller~~ by
[printed name]

Duly authorised signatory

Date 10/22/07

[Company Seal or Stamp]

**Trade Ref**   029708

# Exhibit D

Cash Reporting --    Balance & Transaction Detail                          Business Date: 07/07/2008
Prior Day

Amount Range: All Amounts

Includes Credits and Debits for: All Transaction Types

                                 CHIP REF:   567631**4

✓    555,000.00   BOOK TRANSFER DEBIT        BOOK   3924100189JO    SAME   19:32   07/07/2008   REPAIR
                      YOUR REF:  NONREF
                      PAID TO:   2175501 MARITIME SUSP
                 ACCT PARTY:   AC010340402 BANK OF COMMUNICATIONS HONG KONG SWIFT
                                   COMMHKHH
                    ULTI BENE:  /02753293054606 NORTH CHINA SHIPPING COMPANY, LIMITED
                       REMARK:  FFA JUNE 2008                                    *BUI*
                        REC GFP:  07072028

    265,454.99   FEDWIRE DEBIT             FED    1441000189JO    SAME   11:10   07/07/2008   STRAIGHT
                      YOUR REF:  NONREF
                      PAID TO:   WACHOVIA BK NA CT WACHOVIA BANK NA OF CONNECTICUT
                                   PHILADELPHIA PA 19109
                        FED ID:  021101108

Created on:   07/08/2008 07:13 AM                                                      Page 3 of 36