UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YOK
----------------------------------x
UNITED BULK CARRIERS
INTERNATIONAL L.D.A.

                    Plaintiff,

         -against-

NORTH CHINA SHIPPING LTD., a/k/a
NORTH CHINA SHIPPING CO. LTD.
a/k/a NORTH CHINA SHIPPING
COMPANY LTD. a/k/a NORTH CHINA
SHIPPING COMPANY LIMITED a/k/a
NORTH CHINA SHIPPING (SINGAPORE)
PTE LTD.

                  Defendant.
----------------------------------x

**DECLARATION IN
ACCORDANCE WITH
28 U.S.C. § 1746**
08 Civ. 5879 (WHP)

        Yi Yuefeng, declares, under penalty of perjury, as follows:

1.    I am the director of North China Shipping (Singapore) PTE Ltd. ("NCS Singapore").  I reside at Flat E, 57/F, Block 2, The Merton, No.38, New Praya, Kennedy Town, Hong Kong.  I make this declaration in support of NCS Singapore's motion to vacate the attachment obtained by plaintiff of funds in transit through New York intermediary banks.

2.    NCS Singapore is a corporation formed in Singapore on December 22, 2007.  A copy of the Business Profile issued by

the Accounting and Corporate Regulatory Authority of Singapore
for NCS Singapore is attached hereto as Exhibit A.

3.    The registered office of NCS Singapore is located at 8
Shenton Way, #44-01A, Singapore (068811).  NCS Singapore
conducts business through its agent located in Hong Kong.

4.    NCS Singapore's agent in Hong Kong is North China Shipping
Holdings Co., Ltd.  The address of North China Ship Holdings
Co., Ltd., is 3503-10, 35/F, West Tower, Shun Tak Centre, 168-
200 Connaught Road Central, Hong Kong.

5.    NCS Singapore is an active participant in the chartering
market, entering contracts in its own name both as a charterer
and as a disponent owner.  Plaintiff has attached funds
remitted by NCS Singapore in connection with four separate
contracts entered into by NCS Singapore in its own name and for
its own account.  On June 5, 2008, NCS Singapore, as charterer,
concluded a charter party with E.A.S.T. International Limited
("E.A.S.T."), for the M/V PEARL OF SHARJAH for a time chartered
trip from India to China.  A copy of the fixture note
evidencing the time charter party between NCS Singapore and
E.A.S.T. is attached hereto as Exhibit B.  A copy of a message
confirming the acceptance of terms by NCS Singapore and
attaching the charter party form on which the charter party

will be set forth is attached hereto as Exhibit C.

6.   On July 8, 2008, NCS Singapore remitted the second hire payment due E.A.S.T. under the terms of the charter party in the amount of $100,219.32.  Attached hereto as Exhibit D is a copy of the Customer Receipt issued by the Hong Kong and Shanghai Banking Corporation Limited ("HSBC") in connection with the bank remittance.  The Customer Receipt references NCS Singapore as the applicant for the bank remittance and E.A.S.T. as the beneficiary.  The performing vessel, M/V PEARL OF SHARJAH and the reason for the payment, second hire payment, are also referenced.  Attached as Exhibit E is a copy of the hire statement prepared by NCS Singapore setting forth in detail the calculation of the second hire payment.

7.   The defendant, North China Shipping Ltd., is not a party to or mentioned in the fixture note or in the Customer Receipt issued by the bank. North China Shipping Ltd. had no participation whatsoever in the charter party with E.A.S.T. and it did not pay any part of the hire earned by the M/V PEARL OF SHARJAH.

8.   I understand that plaintiff has attached the hire in the amount of $100,219.32 paid by NCS Singapore to E.A.S.T. and that it has refused to release the hire payment despite the

fact that it has been demonstrated to plaintiff that the
attached funds belong to NCS Singapore, and not to the
defendant, North China Shipping Ltd.

9.    Plaintiff has attached additional funds belonging to NCS
Singapore.  On June 26, 2008, NCS Singapore, as charterer,
concluded a charter party with Dampskibsselskabet Norden A/S
("Norden"), for the M/V NORD MARU for a time chartered trip
from India to China.  A copy of the fixture note evidencing the
charter party between NCS Singapore and Norden is attached
hereto as Exhibit F.

10.  On July 16, 2008, NCS Singapore remitted the second hire
payment due Norden under the terms of the charter party in the
amount of $219,787.67.  Attached hereto as Exhibit G is a copy
of the Transfer Application Form prepared in connection with
the bank remittance.  The Transfer Application Form references
NCS Singapore as the applicant for the bank remittance and
Norden as the beneficiary.  The performing vessel, M/V NORD
MARU and the reason for the payment, second hire payment, are
also referenced.  The Transfer Application Form is dated and
stamped by the remitting bank, HSBC.  Attached as Exhibit H are
copies of the hire statement prepared by NCS Singapore and
Norden setting forth in detail the calculation of the second

hire payment.

11.   The defendant, North China Shipping Ltd., is not a party to or mentioned in the fixture note or in the Transfer Application Form. North China Shipping Ltd. had no participation whatsoever in the charter party with Norden and it did not pay any part of the hire earned by the M/V NORD MARU.

12.   I understand that plaintiff has attached the hire in the amount of $219,787.67 paid by NCS Singapore to Norden and that it has refused to release the hire payment despite the fact that it has been demonstrated to plaintiff that the attached funds belong to NCS Singapore, and not to the defendant, North China Shipping Ltd.

13.   On June 5, 2008, NCS Singapore, as charterer, concluded a charter party with Swissmarine Service S.A.   ("Swissmarine"), for the M/V KYLA FORTUNE to carry a cargo of iron ore from Brazil to China.   A copy of the fixture note evidencing the voyage charter party between NCS Singapore and Swissmarine is attached hereto as Exhibit I.

14.   On July 17, 2008, NCS Singapore remitted the freight due under the voyage charter party to Swissmarine in the amount of $13,227,052.61.   Attached hereto as Exhibit J is a copy of the Customer Receipt issued by HSBC in connection with the bank

remittance.  The Customer Receipt references NCS Singapore as the applicant for the bank remittance and Swissmarine as the beneficiary.  The performing vessel, M/V KYLA FORTUNE and the reason for the payment, freight, are also referenced.  Attached as Exhibit K is a copy of the Freight Credit Statement prepared by NCS Singapore setting forth in detail the calculation of the freight payment.

15.  The defendant, North China Shipping Ltd., is not a party to or mentioned in the fixture note or in the Customer Receipt issued by the bank. North China Shipping Ltd. had no participation whatsoever in the charter party with Swissmarine and it did not pay any part of the freight earned by the M/V KYLA FORTUNE.

16.  I understand that plaintiff has attached part of the freight payment made by NCS Singapore to Swissmarine in the amount of $827,625.38, and that plaintiff has refused to release the portion of the freight payment attached despite the fact that it has been demonstrated to plaintiff that the attached funds belong to NCS Singapore, and not to the defendant, North China Shipping Ltd.

17.  On June 26, 2008, NCS Singapore, as charterer, concluded a charter party with Korea Line (Singapore) PTE. Ltd.  ("Korea

Line"), for the M/V JBU LEVAN for one time chartered trip from India to China.  A copy of the fixture note evidencing the time charter party between NCS Singapore and Korea Line is attached hereto as Exhibit L.

18.    On July 15, 2008, NCS Singapore remitted the second payment of hire due under the time charter party to Korea Line in the amount of $77,302.83.  Attached hereto as Exhibit M is a copy of the Transfer Application Form stamped and authorized by HSBC in connection with the bank remittance.  The Transfer Application Form references NCS Singapore as the applicant for the bank remittance and Korea Line as the beneficiary.  The performing vessel, M/V JBU LEVAN and the reason for the payment, second payment of hire, are also referenced.  Attached as Exhibit N is a copy of the Second Hire Statement prepared by NCS Singapore setting forth in detail the calculation of the hire payment.

19.  The defendant, North China Shipping Ltd., is not a party to or mentioned in the fixture note or in the Transfer Application Form validated by the bank. North China Shipping Ltd. had no participation whatsoever in the charter party with Korea Line and it did not pay any part of the hire earned by the M/V JBU LEVAN.

20.  I understand that plaintiff has attached part of the hire payment made by NCS Singapore to Korea Line in the amount of $77,302.83, and that plaintiff has refused to release the funds attached despite the fact that it has been demonstrated to plaintiff that the attached funds belong to NCS Singapore, and not to the defendant, North China Shipping Ltd.

21.  I have reviewed the Amended Verified Complaint in this action.  NCS Singapore was not a party to the contract sued upon by plaintiff in its complaint, namely the time charter party dated February 23, 2007, alleged in paragraph 4 of the Complaint, and is in no way indebted to plaintiff.

22.  NCS Singapore and defendant, North China Shipping Ltd., are distinct and separate companies.  North China Shipping Ltd., is a Bahamian company (see Amended Verified Complaint, ¶ 3), while NCS Singapore is a company formed in Singapore.  NCS Singapore's business is separate from the business conducted by North China Shipping Ltd.  NCS Singapore does not and has never done business in the name of or as North China Shipping Ltd. or North China Shipping Limited.

WHEREFORE, I respectfully pray for an order by the Court vacating the attachment, awarding costs and attorneys' fees to NCS Singapore, and granting such other and further

relief as the Court made deem just and proper in the premises.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Hong Kong on July 30, 2008.

_____
Yi Yuefeng

# Exhibit A

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
(ACRA)



**INFORMATION RESOURCES**

WHILST EVERY ENDEAVOUR IS MADE TO ENSURE THAT INFORMATION PROVIDED IS UPDATED & CORRECT. THE AUTHORITY DISCLAIMS ANY LIABILITY FOR ANY DAMAGE OR LOSS THAT MAY BE CAUSED AS A RESULT OF ANY ERROR OR OMISSION.

**Business Profile (Company) of NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD. (200723536E)**                                    Date: 22/12/2007

**The Following Are The Brief Particulars of :**

| | |
|---|---|
| Registration No. : | : 200723536E |
| Company Name. : | : NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD. |
| Former Name if any : | : |
| Incorporation Date : | : 22/12/2007 |
| Company Type : | : LIMITED PRIVATE COMPANY |
| Status : | : Live Company |
| Status Date : | : 22/12/2007 |

**Principal Activities**

| | |
|---|---|
| Activities (I) : | : 55392 |
| Description : | : SHIPPING AGENCIES (FREIGHT) |
| Activities (II) : | : 53101 |
| Description : | : SHIPPING LINES |

**Capital**

| Issued Share Capital * (AMOUNT) | Number of shares | Currency | Share Type |
|---|---|---|---|
| 100.00 | 100 | SINGAPORE, DOLLARS | ORDINARY |

**\* Number of Shares includes number of Treasury Shares**

| Paid-Up Capital (AMOUNT) | Number of shares | Currency | Share Type |
|---|---|---|---|
| 100.00 | | SINGAPORE, DOLLARS | ORDINARY |

COMPANY HAS THE FOLLOWING ORDINARY SHARES HELD AS TREASURY SHARES

| Number Of Shares | Currency |
|---|---|
| | |

| | |
|---|---|
| Registered Office Address : | : 8 SHENTON WAY<br>#44-01A<br>SINGAPORE (068811) |
| Date of Address : | : 22/12/2007 |

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
(ACRA)



INFORMATION RESOURCES

WHILST EVERY ENDEAVOUR IS MADE TO ENSURE THAT INFORMATION PROVIDED IS UPDATED & CORRECT. THE AUTHORITY DISCLAIMS ANY LIABILITY FOR ANY DAMAGE OR LOSS THAT MAY BE CAUSED AS A RESULT OF ANY ERROR OR OMISSION.

**Business Profile (Company) of NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD. (200723536E)**                    Date: 22/12/2007

| | |
|---|---|
| Date of Last AGM | : |
| Date of Last AR | : |
| Date of A/C Laid at Last AGM | : |
| Date of Lodgment of AR, A/C | : |

**Audit Firms**

| NAME |
|---|
| E H LUAR & CO |

**Charges**

| Charge No. | Date Registered | Amount Secured | Chargee(s) |
|---|---|---|---|

**Officers/Agents**

| Name | ID | Nationality | Source of | Date of |
|---|---|---|---|---|
| Address | | Position Held | Address | Appointment |
| CHIA YUEN KIN | S1453272B | SINGAPORE CITIZEN | ACRA | 22/12/2007 |
| 97A UPPER THOMSON ROAD #06-03 LAKEVIEW ESTATE SINGAPORE (574327) | | SECRETARY | | |
| HU BIN | S2725045I | SINGAPORE P.R. | ACRA | 22/12/2007 |
| 72 BAYSHORE ROAD #21-13 COSTA DEL SOL SINGAPORE (469988) | | DIRECTOR | | |

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
(ACRA)



WHILST EVERY ENDEAVOUR IS MADE TO ENSURE THAT INFORMATION PROVIDED IS UPDATED & CORRECT. THE AUTHORITY DISCLAIMS ANY LIABILITY FOR ANY DAMAGE OR LOSS THAT MAY BE CAUSED AS A RESULT OF ANY ERROR OR OMISSION.

**Business Profile (Company) of NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD. (200723536E)**                                    Date: 22/12/2007

| Shareholder (s) | | | | | |
| --- | --- | --- | --- | --- | --- |
| Name | | ID | Nationality/Place of incorporation/Origin | Source of Address | Address Changed |
| Address | | | | | |
| 1 | HU BIN | S2725045I | SINGAPORE P.R. | ACRA | 22/12/2007 |
| | 72 BAYSHORE ROAD #21-13 COSTA DEL SOL SINGAPORE (469988) | | | | |

| Ordinary (Number) | Currency |
| --- | --- |
| 100 | SINGAPORE, DOLLARS |

| Abbreviation |
| --- |

UL - Local Entity not registered with ACRA

UF - Foreign Entity not registered with ACRA

V/Share - Value Per Share

AR - Annual Return

AGM - Annual General Meeting

A/C - Accounts

OSCARS - One Stop Change of Address Reporting Service by Immigration & Checkpoint Authority.

PLEASE NOTE THAT INFORMATION HEREIN CONTAINED IS EXTRACTED FROM FORMS/TRANSACTIONS FILE WITH THE AUTHORITY

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
(ACRA)



INFORMATION RESOURCES

WHILST EVERY ENDEAVOUR IS MADE TO ENSURE THAT INFORMATION PROVIDED IS UPDATED & CORRECT. THE AUTHORITY
DISCLAIMS ANY LIABILITY FOR ANY DAMAGE OR LOSS THAT MAY BE CAUSED AS A RESULT OF ANY ERROR OR OMISSION.

**Business Profile (Company) of NORTH CHINA SHIPPING (SINGAPORE) PTE.
LTD. (200723536E)**                                                      **Date: 22/12/2007**

FOR REGISTRAR OF COMPANIES AND BUSINESSES
SINGAPORE

RECEIPT NO.      : ACR0000002667834A

DATE             : 22/12/2007

This is computer generated. Hence no signature required.

# Exhibit B

From:          Zeke Sun [zeke@northchina.com.hk]
Sent:          Monday, July 21, 2008 5:34 AM
To:            qiuximing
Subject:       Fw: PEARL OF SHARJAH RECAP


TKS N BRGDS
ZEKE
NORTH CHINA SHIPPING HOLDINGS CO.,LTD AS AGENT ONLY TEL:00 852 3184 2617 MOB:00 852 6348 2893
FAX:00 852 3184 2070 MSN:SUNJUFAN@HOTMAIL.COM
----- Original Message -----
From: "Li Wen Bin" <li@northchina.com.hk>
To: <zeke@northchina.com.hk>
Sent: Friday, June 06, 2008 3:23 PM
Subject: 转发: PEARL OF SHARJAH RECAP




THKS N RGDS
LI WENBIN
NCS AS AGENT ONLY
TEL : 852-3184 2000
FAX : 852-3184 2070
MOB : 852-9151 3135
EMAIL : li@northchina.com.hk
MSN : liwen37@hotmail.com


-----邮件原件-----
发件人: Wilfrey Lam [mailto:hrs.pmx@howerobinson.com]
发送时间: 2008年6月5日 19:19
收件人: hrs.pmx@howerobinson.com
主题: PEARL OF SHARJAH RECAP


HOWE ROBINSON SHIPBROKERS - Panamax Dept.

E-mail: hrs.pmx@howerobinson.com
LBW51666887   05/06/2008   12:18:45

LI / WILFREY


RE:MV PEARL OF SHARJAH - A/C NCS

PLS TO RECAP MAINTERMS ASF :-

M/V PEARL OF SHARJAH
FLAG CYPRUS / BUILT 1983
SDWT  64,169MT ON DRAFT: 12.963 SSW
LOA : 224.50 M / BEAM: 32.20 M

```
CRANES 4 X 25 T
GRABS  4 X 8 CBM (MAX LOAD 12.0MT)
HO/HA: 7/7
GRAIN 2637844 CBF
NRT/GRT: 21282.00/35208.00
```

SPEED / CONSUMPTION

AT SEA:- BALLAST: ABT  13K ON ABT  30MT IFO(180 CST) + 1.5 MT IFO + ABT 1.5
MT MDO LADEN: ABT  13K  ON ABT  32MT IFO (180 CST) + 1.5 MT

IFO+ ABT 1.5 MT MDO

IN PORT:- IDLE: ABT :   3 MT IFO  +  ABT 1.8 MT MDO
GEAR WORKING ABT: 3.5 MT  IFO  + ABT 1.8 MT  MDO

SERVICE SPEED IS BSS GOOD WEATHER CONDITIONS AND UP TO BEAUFORT FORCE 4
(CALCULATION OF VESSELS PERFORMANCE ON BOTH LADEN AND BALLAST PASSAGES HAS
TO BE BASED UPON AN AVERAGE SPEED/ CONSUMPTION DURING WEATHER DAYS UPTO
BEAUFORT 4 AND/OR DOUGLAS SEA STATE 3,AND NO ADVERSE CURRENTS AND NO
NEGATIVE INFLUENCE OF SWELL. LADEN OR BALLAST SPEED AND CONSUMPTION FOR
PERIOD EXCEEDING GOOD WEATHER CONDITIONS IS TO BE EXPRESSLY EXCLUDED FROM
CALCULATIONS. OWNERS LIBERTY TO USE MDO FOR MANOUVERING AND IN CONFINED/
RESTRICTED WATERWAYS AND IN COLD WEATHER FOR BOILER/ HEATING. ALL DETS ABOUT


- ACC NORTH CHINA SHIPPING (SINGAPORE) PTE
- DELY PMO ATDNSHINC
- REDELY DLOSP 1SP CHINA ATDNSHINC
- L/C 10-16/06/2008 BSS LT
- ONE TIME CHARTER TRIP VIA WC INDIA WITH IRON ORE TRADING ALWAYS AFLOAT,
ALWAYS VIA SAFE PORT(S)/BERT(S)/ANCHORAGE(S)PLACES(S)DURATION
ABT 25/30DAYS WOG

- HIRE USD 55,000 DIOT PAYABLE 15DAYS IN ADVANCE

- BUNKER CLS
  BOD ABT 1000-1050MT IFO N ABT 75-125 MT MGO
  BOR TO BE ABT SAME QTTY AS ON DELY.
  PRICE USD 625 PER MT FOR IFO AND USD 1250 PER MT FOR MGO BENDS.

- 1ST 15DAYS HIRE AND ESTIMATE CONSUME BUNKER TO REACH SPORE TO BE PAID W/I
2BANKING DAYS AFT VSL'S DELIVERY

- ON ARRIVAL LOADPORT VESSEL HOLDS TO BE CLEAN TO CARRY CHRS INTENDED CARGO
TO SATISFACTION OF THE INDEPENDENT SURVEYORS. IN CASE VESSEL FAILS ON SURVEY
THEN OWNERS TO BE RESPONSIBLE FOR TIME LOST UNTIL SHE IS AGAIN PASSED BY
SURVEYOR PASSES. IF PARTIALLY PASSED HOLDS ACCEPTED AND IN CASE VSL
COMMENCES LOADING ON THE PASSED HOLDS THEN VSL TO BE ON-HIRE ON PRO RATA BSS
FM COMMENCEMENT OF LOADING

- ILOHC USD 4,500 LS
- C/V/E USD 1,250 PMPR
- TTL 5PCT INCL 1.25PCT HOWE ROBINSON
- SUBS CHRTRS RECNFM LATEST BY 1430 DUBAI 06TH JUN 08
- SUB REVIEW AS PER OWNS PF NYPE CP

2

END

PLS CONFIRM

THANKS AGAIN FOR YR GOOD SUPPORT

BRGDS
WILFREY LAM / HRS HK
DDI + 852 3555 1111
MOB + 852 9093 4455


Tel / Fax:
================================================
London     +44 20 7488 3444 /  +44 20 7457 8799
Hamburg    +49 40 2263 0830 /  +49 40 226308399
Hong Kong  +852  3555 1000  /  +852  2529 8378
Tokyo      +81 3 3583 9768  /  +81 3  3584 6266
Shanghai   +86 21 3318 4550 /  +86 21 6391 0708
================================================
E-mail: hrs.pmx@howerobinson.com

This e-mail and any attachments are believed to be free from viruses but it
is your responsibility to carry out all necessary virus checks. Howe
Robinson Shipbrokers accepts no liability for any damage caused by any virus
transmitted by this e-mail.

# Exhibit C

From:            FEOPS Zeke Sun [feops@northchina.com.hk]
Sent:            Monday, July 28, 2008 2:58 AM
To:              qiuximing
Subject:         Fw: MV PEARL OF SHARJAH / NCS - CP DD 06.06.08
Attachments:     PEARL OF SHARJAH -SHADAB CP 21_06_06 MAINBODY.doc; PEARL OF SHARJAH -
                 SHADAB CP 21_06_06 rider.doc


----- Original Message -----
From: "Mark Le Blanc Smith" <hrs.pmx@howerobinson.com>
To: "North China Shipping" <feops@northchina.com.hk>
Sent: Tuesday, June 10, 2008 6:19 PM
Subject: MV PEARL OF SHARJAH / NCS - CP DD 06.06.08


HOWE ROBINSON SHIPBROKERS - Panamax Dept.

E-mail: hrs.pmx@howerobinson.com
MLS51837231   10/06/2008   11:19:14

ZEKE / MARK

MV PEARL OF SHARJAH / NCS - CP DD 06.06.08
==========================

PLSD TO CONFIRM HAVING CLEAN FIXED WITH CP DD 6TH JUNE 2008


M/V PEARL OF SHARJAH
FLAG CYPRUS / BUILT 1983
SDWT  64,169MT ON DRAFT: 12.963 SSW
LOA : 224.50 M / BEAM: 32.20 M
CRANES 4 X 25 T
GRABS  4 X 8 CBM (MAX LOAD 12.0MT)
HO/HA: 7/7
GRAIN 2637844 CBF
NRT/GRT: 21282.00/35208.00

SPEED / CONSUMPTION

AT SEA:- BALLAST: ABT  13K ON ABT  30MT IFO(180 CST) + 1.5 MT IFO +
ABT 1.5 MT MDO LADEN: ABT  13K  ON ABT  32MT IFO (180 CST) + 1.5 MT

IFO+ ABT 1.5 MT MDO

IN PORT:- IDLE: ABT :   3 MT IFO  +  ABT 1.8 MT MDO
GEAR WORKING ABT: 3.5 MT  IFO  + ABT 1.8 MT  MDO

SERVICE SPEED IS BSS GOOD WEATHER CONDITIONS AND UP TO BEAUFORT FORCE
4 (CALCULATION OF VESSELS PERFORMANCE ON BOTH LADEN AND BALLAST
PASSAGES HAS TO BE BASED UPON AN AVERAGE SPEED/ CONSUMPTION DURING
WEATHER DAYS UPTO BEAUFORT 4 AND/OR DOUGLAS SEA STATE 3,AND NO ADVERSE
CURRENTS AND NO NEGATIVE INFLUENCE OF SWELL. LADEN OR BALLAST SPEED
AND CONSUMPTION FOR PERIOD EXCEEDING GOOD WEATHER CONDITIONS IS TO BE

1

EXPRESSLY EXCLUDED FROM CALCULATIONS. OWNERS LIBERTY TO USE MDO FOR
MANOUVERING AND IN CONFINED/ RESTRICTED WATERWAYS AND IN COLD WEATHER
FOR BOILER/ HEATING.
ALL DETS ABOUT


- ACCNORTH CHINA SHIPPING(SINGAPORE) PTE LTD
- DELY PMO ATDNSHINC
- REDELY DLOSP 1SP CHINA ATDNSHINC
- L/C 10-15/06/2008 BSS LT
- ONE TIME CHARTER TRIP VIA WC INDIA WITH IRON ORE TRADING ALWAYS
  AFLOAT, ALWAYS VIA SAFE
  PORT(S)/BERT(S)/ANCHORAGE(S)PLACES(S)DURATION
  ABT 25/30DAYS WOG

- HIRE USD 55,000 DIOT PAYABLE 15DAYS IN ADVANCE

- BUNKER CLS
  BOD ABT 1000-1050MT IFO N ABT 75-125 MT MGO
  BOR TO BE ABT SAME QTTY AS ON DELY.
  PRICE USD 625 PER MT FOR IFO AND USD 1250 PER MT FOR MGO BENDS.

- 1ST 15DAYS HIRE AND ESTIMATE CONSUME BUNKER TO REACH SPORE TO BE
  PAID W/I 2BANKING DAYS AFT VSL'S DELIVERY

- ON ARRIVAL LOADPORT VESSEL HOLDS TO BE CLEAN TO CARRY CHRS INTENDED
  CARGO TO SATISFACTION OF THE INDEPENDENT SURVEYORS. IN CASE VESSEL
  FAILS ON SURVEY THEN OWNERS TO BE RESPONSIBLE FOR TIME LOST UNTIL
  SHE IS AGAIN PASSED BY SURVEYOR PASSES. IF PARTIALLY PASSED HOLDS
  ACCEPTED AND IN CASE VSL COMMENCES LOADING ON THE PASSED HOLDS THEN
  VSL TO BE ON-HIRE ON PRO RATA BSS FM COMMENCEMENT OF LOADING

- ILOHC USD 4,500 LS
- C/V/E USD 1,250 PMPR
- TTL 5PCT INCL 1.25PCT HOWE ROBINSON


OTHERWISE AS PER PEARL OF SHARJAH CP DD 21ST JUNE 2006 LOGICALLY
AMENDED IN LINE WITH MAIN TERMS WITH FOLLOWING AMENDMENTS AND
ADDITIONS:


RIDER CLAUSES
-------------

CLS 28.) DELETE "GIVEN IN GOOD FAITH,"


CLS 30.) DELETE IN FULL AND REPLACE WITH "IRON IN BULK ONLY."


BANKS DTLS

Emirates Trading Agency L.L.C.
US$ A/C No. 04-48-13259-8
Mashreqbank PSC
Hor Al Anz Branch

```
Dubai, U.A.E.
Through Bank of New York, New York
Swift Code: BOMLAEADXXX
Ref. P.O.sharjah/NCS 06.06.08

-END-


================================================================
Post-fixture matters will be handled by: ANDORA MA

All post-fixture messages should be addressed to:
E-Mail: hrs.opsfeast@howerobinson.com
Fax   :  +852 2529 8378
Phone :  +852 3555 1000

Dry P-F Contact details
                       Direct              Mobile
Andora Ma      +852 3555 1133      +852 9555 6470

1.25PCT commission to Howe Robinson Shipbrokers is to be inserted in
C/P.

Please note we will be collecting our commission from Owners and
will debit them accordingly.
================================================================


THANKS YR SUPPORT IN CONCLUDING THIS FIXTURE


BRGDS

MARK LE BLANC SMITH - HRS HONG KONG

DIR: (852) 3555 1182 / 1181
MOB: (852) 6330 6476




Tel / Fax:
=========================================
London     +44 20 7488 3444 /  +44 20 7457 8799
Hamburg    +49 40 2263 0830 /  +49 40 226308399
Hong Kong  +852  3555 1000  /  +852  2529 8378
Tokyo      +81 3 3583 9768  /  +81 3  3584 6266
Shanghai   +86 21 3318 4550 /  +86 21 6391 0708
=========================================
E-mail: hrs.pmx@howerobinson.com

This e-mail and any attachments are believed to be free from viruses but it
is your responsibility to carry out all necessary virus checks. Howe
Robinson Shipbrokers accepts no liability for any damage caused by any virus
```

3

transmitted by this e-mail.

# TIME CHARTER
## New York Produce Exchange Form
November 6th,1913-Amended October 20th, 1921;August 6th, 1931;October 3rd;June 12th, 1981

| | | |
|---|---|---|
| | **THIS CHARTER PARTY**, made and concluded in .... _**Dubai**_, | 1 |
| |         **21**[ST]  day of _June_ ~~19~~ _**2006**_ | 2 |
| **Owners** | Between    _**E.A.S.T. INTERNATIONAL LIMITED, LONDON**_ | 3 |
| | Owners of | 4 |
| | the good _____Motorship/Steamship _____ _" PEARL OF SHARJAH "_ | 5 |
| **Description of Vessel** | _**Vessel's description – See Clause 28**_ ~~of _____ of _____ tons gross register, and~~ | 6 |
| | ~~_____ tons net register, having engines of~~ | 7 |
| | ~~horsepower and with hull, machinery and equipment in a thoroughly efficient~~ | 8 |
| | ~~state, and classed _____, and about~~ | 9 |
| | ~~_____ cubic feet grain/bale capacity~~ | 10 |
| | ~~_____, a n d a b o u t~~ | 11 |
| | ~~long/metric tons deadweight capacity (cargo and~~ | 12 |
| | ~~bunkers, including freshwater and stores not exceeding~~ | 13 |
| | ~~long/metric tons) on a salt water draft of _____ on summer~~ | 14 |
| | ~~freeboard, inclusive of permanent bunkers, which are of the capacity of about~~ | 15 |
| | ~~_____ long/metric tons of~~ | 16 |
| | ~~_____ fuel oil and~~ | 17 |
| | ~~long/metric tons of _____ ,~~ and | 18 |
| | ~~Capable of steaming, fully laden, under good weather conditions about~~ | 19 |
| | ~~_____ knots on a consumption of about~~ | 20 |
| | ~~long/metric tons of~~ | 21 |
| | | 22 |
| | ~~now~~ | 23 |
| | _____ and | 24 |
| **Charterers** | _**SHADAB PTY LTD**_, | 25 |
| | Charterers of the city of _**Perth**_ | 26 |
| | The Owners agree to let and the Charterers agree to hire the vessel from the | 27 |
| **Duration** | the time of delivery for ~~about~~ _One Time Charter trip via South East Kalimantan or in Charterers' option South_ | 28 |
| | _Africa to Pakistan/West India range with intended cargo of coal in bulk, trading always via safe port(s), safe berth(s), safe anchorage(s)_ | |
| | _always afloat, always accessible, always within Institute Warranty Limits, for duration about 30/40 days_ | 29 |
| | _without guarantee._ | |
| | _____ within below mentioned trading limits. | 30 |
| **Sublet** |     Charterers shall have liberty to sublet the vessel for all or any part of the | 31 |
| | time covered by this Charter, but Charterers shall remain responsible for the | 32 |
| | fulfillment of this Charter. | 33 |
| **Delivery** |     Vessel shall be placed at the disposal of the Charterers at _on dropping last outward sea pilot one safe port_ | 34 |
| | _**Mundra, West India, at any time day/night, Sundays and holidays included,**_ | |
| | | 35 |
| | | 36 |
| | | 37 |
| | ~~in such dock or at such berth or place~~ (where she may safely lie, always afloat, | 38 |
| | at all times of tide, ~~except as otherwise provided in Clause 6)~~ as the ~~Charterers~~ | 39 |
| | ~~may direct. If such dock, berth or place be not available, time shall count as~~ | 40 |
| | ~~prevised in Clause 5.~~ _**Acceptance of delivery shall not constitute any waiver of Owner's obligation.**_ | 41 |
| | Vessel on her delivery shall be ready to receive  cargo with | |
| | clean-swept holds and tight, staunch, strong and in every way fitted for ~~ordi-~~ | 42 |
| | ~~nary cargo service,~~ having water ballast and with sufficient power to operate all | 43 |
| | cargo-handling gear simultaneously (and with full complement of officers and | 44 |
| | crew for a vessel of her tonnage), to be employed in carrying lawful merchant- | 45 |
| **Dangerous** | dise excluding ~~any goods of a dangerous, injurious, flammable or corrosive~~ | 46 |

| | | |
|---|---|---|
| Cargo | ~~nature unless carried in accordance with the requirements or recom-~~ | 47 |
| | ~~mendations of the proper authorities of the state of the vessel's registry and of~~ | 48 |
| | ~~the states of ports of shipment and discharge and fo any intermediate state or~~ | 49 |
| Cargo | ~~ports through whose waters the vessel must pass. Without prejudice to the~~ | 50 |
| Exclusions | ~~generality of the foregoing, in addition the following are specifically exclude:~~ | 51 |
| | ~~livestock of any description, arms, ammunition, explosive.~~ | 52 |
| | ***See Clause 30*** | 53 |
| | | 54 |
| | | 55 |
| | | 56 |

| | | |
|---|---|---|
| Trading | The Vessel shall be employed in such lawful trades between safe ports and | 57 |
| Limts | places within ***safe berths, safe anchorages, always afloat, within Institute Warranty Limits with bulk/harmless*** | 59 |
| | ***cargo.*** | |
| | excluding ***Cuba, Israel, North Korea, Cambodia, CIS Pacific and Nigeria and subject to changes and*** | 60 |
| | ***recommendations issued by the country of the vessel's flag.*** | 61 |
| | | 62 |

| | | |
|---|---|---|
| | as  the Charterers or their agent shall direct, on the following conditions ; | 63 |
| Owners | 1. The Owners shall provide and pay for the insurance of the Vessel, and | 64 |
| To | for all provisions, cabin, deck, engine-room and other necessary stores, in- | 65 |
| Provide | cluding boiler water ***, drink water, lubricating oil and garbage*** ; shall pay for wages consular shipping and Discharging | 66 |
| | fees of the crew and charges for port services pertaining to the crew. Shall | 67 |
| | maintain the Vessel's class and keep her in a thoroughly efficient state in hull, | 68 |
| | machinery and equipment for and during the service. | 69 |
| Charterers | 2. The Charterers, while the Vessel is on hire, shall provide and pay for all | 70 |
| To | the bunkers except ***galley, lubricating oil,*** ~~as otherwise agreed~~ port charges, ***customary*** pilotages, towages, ***boatages*** | 71 |
| | ***on Charterers' business.*** ~~agen-~~ | |
| Provide | cies, commissions, consular charges (except those pertaining to individual | 72 |
| | crew members of flag of the Vessel), and all other usual expenses except  those | 73 |
| | stated in Clause1, but when the Vessel puts into a port for causes for which | 74 |
| | Vessel is responsible, then all such charges incurred shall be paid by the | 75 |
| | Owners. ~~Fumigations ordered because of illness of the crew shall be for~~ | 76 |
| | ~~Owners' account. Fumigations ordered because of cargoes carried or ports~~ | 77 |
| | ~~visited while vessel is employed under this Charter shall be for the Charterers'~~ | 78 |
| | ~~account. All other fumigations shall be for the Charterers' account after the Vessel has~~ | 79 |
| | ~~been on charter for continuous period of six months or more.~~ | 80 |
| | Charterers shall provide necessary dunnage, ***lashing materials*** and shifting boards, also | 81 |
| | any extra fittings requisite for a special trade or unusual cargo, but Owners | 82 |
| | shall allow them the use of  any dunnage and shifting boards already aboard vessel | 83 |
| | | 84 |

| | | |
|---|---|---|
| Bunkers | ~~3. The Charterers on delivery, and the Owners on redelivery, shall take~~ | 85 |
| on | ~~over and pay for all fuel and diesel oil remaining on board the vessel as~~ | 86 |
| Delivery | ~~hereunder. The vessel shall be delivered with~~ | 87 |
| and | ~~long /metric* tons of ____ fuel oil at the price of _____ per metric ton;~~ | 88 |
| | ~~_____ tons of diesel oil at the price of~~ | 89 |
| Redelivery | ~~per ton. The vessel shall be redelivered with~~ | 90 |
| | ~~tons of fuel oil at the price of _____ per ton~~ | 91 |
| | ~~_____ tons of diesel oil at the price of _____ per ton~~ | 92 |
| | | 93 |
| | | 94 |
| | ~~(*Same tons apply throughout this clause)~~  See Clause 85. | 95 |
| Rate | 4. The Charterers shall pay for the use and hire of the said vessel at the | 96 |
| of | rate of ***USD 16,750  (Sixteen Thousand and Seven Hundred Fifty Dollars)***_____ daily, or | 97 |
| Hire | only per day pro rata daily including overtime ***payable every 15 days in advance.*** United States Currency | 98 |
| | ~~per ton on vessel's total deadweight carry capacity, including bunkers and~~ | 99 |
| | ~~stores, on summer freeboard, per calendar month,~~ | 100 |
| | commencing on and from the ***time*** day of her delivery, as aforesaid, and at and after | 101 |
| | the same rate for any part of a  ***day*** month; hire shall continue until the hour of the | 102 |
| Redelivery | day of her redelivery ***based on GMT*** in like good order and condition, ordinary wear and tear | 103 |
| Areas and | excepted, to the Owners(unless vessel lost) at ***on dropping last outward sea pilot one safe port  Pakistan/West*** | 104 |

|  | *India, port in Charterers option, any time day or night Sunday and holidays included,* |  |
|---|---|---|
| **Notices** |  | 105 |
|  |  | 106 |
|  | unless otherwise mutually agreed. | 107 |
|  | Charterers shall give Owners not less than *15/10/7* days notice | 108 |
|  | of vessel's expected date of redelivery and probable port *and 5 / 3 / 2 / 1 days definite redelivery notice.* | 109 |
|  |  | 110 |
| **Hire** | 5. payment of hire shall be made *1st hire and bunker on delivery value to be paid within 3 banking days after* | 111 |
|  | *vessels delivery and Charterers receipt of relevant invoice in Seoul.  Charterers are entitled to deduct from* |  |
|  | *last sufficient hire payments estimated Owners disbursement, but maximum USD500 at each load and* |  |
|  | *discharge port to be deducted against supporting vouchers as well as bunker on redelivery value.*  ~~so as to be~~ |  |
|  | ~~received by Owners or their~~ |  |
| **Payment** | designated payee in ~~New York, i.e.~~ | 112 |
| **And** | *PAY TO        :  STANTARD CHARTERED BANK, NEW YORK* | 113 |
| **commence** | *FOR THE CREDIT OF  :  STANDARD CHARTERED BANK, DUBAI* | 114 |
| **ment** | *FOR THE ACCOUNT OF : EMIRATES TRADING AGENCY LLC* |  |
|  | *USD A/C NO. 0101 41037 6901* |  |
|  | *WITH STANDARD CHARTERED BANK, DUBAI.* |  |
|  | in united States Currency, in funds | 115 |
|  | available to the  Owners on the due date, ~~semi-monthly~~ *every 15 days* in advance, and for the | 116 |
|  | last half month or part of same the approximate amount of hire, and should | 117 |
|  | same not cover the actual time, hire shall be paid for the balance day by day as | 118 |
|  | it becomes due, if so required by Owners. Failing the punctual and regular | 119 |
|  | payment of the hire, or on any breach of this Charter, the Owners shall be at | 120 |
|  | liberty to withdraw the vessel from the service of the Charterers without pre- | 121 |
|  | judice to any claims they (the Owners) may otherwise have on the Charterers. *See Clause 39* | 122 |
|  | Time shall count from *the time of which dropping last outward sea pilot and* ~~7 A.M. on the working day~~ | 123 |
|  | ~~following that on~~ |  |
|  | ~~which written notice of readiness has been given to Charterers or their agents~~ | 124 |
|  | ~~before 4 P.M., but if required by Charterers, they shall have the privilege of~~ | 125 |
|  | ~~using vessel at once, in which case the vessel will be on hire form the com~~ | 126 |
|  | ~~mencement of work.~~ | 127 |
| **Cash** | Cash for vessel's ordinary disbursements at any port may be advanced, | 128 |
| **Advances** | as required by the Captain *and/or by the Owners* , by the Charterers or their agents, subject to 2$^{1/2}$ | 129 |
|  | percent commission and such advances shall be deducted from the hire. The | 130 |
|  | Charterers, however, shall in no way be responsible for the application of such | 131 |
|  | advances. | 132 |
| **Berths** | ~~6. Vessel shall be loaded and discharged in any dock or at any berth or~~ | 133 |
|  | ~~place that Charterers or their agents may direct, provided the vessel can safely~~ | 134 |
|  | ~~lie always afloat at any time of tide, except at such places where it is customary~~ | 135 |
|  | ~~for similar size vessel to safely lie aground.~~ | 136 |
| **Spaces** | 7. The whole reach of the vessel's holds, decks, and usual places of | 137 |
| **Available** | loading (not more than she can reasonably and safely stow and carry), also | 138 |
|  | accommodations for supercargo, if carried, shall be at the Charterers' dis- | 139 |
|  | posal, reserving only proper and sufficient pace for ship's officers, crew, | 140 |
|  | tackle, apparel, furniture, provisions, stores and fuel. *No passengers are to be allowed.* | 141 |
| **Prosecution** | 8. The Captain shall prosecute his voyages with due *utmost* dispatch, and shall | 142 |
| **of** | render all customary assistance with ship's crew and boats. The Captain | 143 |
| **Voyages** | (although appointed by the Owners) shall be under the orders and directions of | 144 |
|  | the Charterers as regards employment and agency ; and Charterers are to | 145 |
|  | perform all cargo handling at their expense under the supervision of the | 146 |
|  | captain , who is to sign the bills of lading for cargo as presented in conformity | 147 |
|  | with mate's receipts. However, owners/master to authorize charterers /sub-charterers | 148 |
|  | or their agent to sign bills of lading on their behalf in strict accordance with | 149 |
| **Bills** | mate's receipt without prejudice to this carter party. | 150 |
| **of** | All bills of lading shall be |  |
| **Lading** | without prejudice to this Charter and the Charterers shall indemnify the Own- | 151 |
|  | ers against all consequences or liabilities which may arise from any inconsis- | 152 |
|  | tency between this Charter and any bills of lading ~~or waybills~~ signed by the | 153 |
|  | Charterers or their agents or by the Captain at their request. | 154 |
| **Conduction of** | 9. If the Charterers shall have reason to be dissatisfied with the conduct of | 155 |

|  |  |  |
|---|---|---|
|  | the Captain or officers, the Owners shall , on receiving particulars of the | 156 |
|  | complaint _reasonably request by the Charterers' in writing_, investigate the same, and, if necessary, make a | 157 |
|  | change in the | |
|  | appointments. | 158 |
| **Supercargo** | 10. The Charterers are entitled to appoint a supercargo, who shall accom | 159 |
| **and** | pany the vessel **provided a Letter of Indemnity has been submitted to Owner's as per Owners P&I Club** | 160 |
|  | **wordings** and see that voyages are prosecuted with ~~due~~ _utmost_ dispatch. He is | |
| **Meals** | to be furnished with free accommodation and same fare as provided for | 161 |
|  | Captain's table, Charterers paying at the rate of _USD 10.00_____  per day. | 162 |
|  | Owners shall victual pilots and customs officers, and also when authorized by | 163 |
|  | Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc., | 164 |
|  | ~~Charterers paying at the rate of _____ per meal for all such victual-~~ | 165 |
|  | ~~lling.~~ _Expense for such victualling are covered under the lumpsum as set out under Clause 65._ | 166 |
| **Sailing** | 11. The Charterers shall furnish the Captain from time to time with all | 167 |
| **Orders** | requisite instructions and sailing directions, in writing , and the Captain shall | 168 |
| **and Logs** | keep full and correct deck and engine logs of the voyage or voyages, which are | 169 |
|  | to be patent to the Charterers or their agents, and furnish the Charterers, their | 170 |
|  | agents or supercargo, when required, with a true copy of such deck and engine | 171 |
|  | logs, showing the course of the vessel, distance run _the speed_ and the consumption of | 172 |
|  | fuel. _And the direction and force of wind and sea, all in English._ | 173 |
| **Ventilation** | 12. The Captain shall use diligence in caring for the ventilation of the | 174 |
|  | cargo. **As far as her vessel description can be** | 175 |
| **Continuation** | 13. ~~The charterers shall have the option of continuing this Charter for a~~ | 176 |
|  | ~~further period of~~ | 177 |
|  |  | 178 |
| **Laydays/** | 14. ~~If required by Charterers, time shall not commence before~~ | 179 |
| **Canceling** | _See Clause 29_____ ~~and should vessel not have given written~~ | 180 |
|  | ~~notice of readiness on or before _____ but not~~ | 181 |
|  | ~~later than 4 P.M. Charterers or their agents shall have the option of canceling~~ | 182 |
|  | ~~this Charterers at any time not later than the day of vessel's readiness.~~ | 183 |
| **Off** | 15. In the event of the loss of time from deficiency and/or default _and/or strike or sabotage by_ of officers | 184 |
| **Hire** | or crew or deficiency of stores, fire, breakdown of, or damages to, hull, | 185 |
|  | machinery or equipment, grounding, _detention by arrest of the ship,_ detention by average accidents to ship or | 186 |
|  | cargo unless resulting from inherent vice, quality or defect of the cargo, | 187 |
|  | drydocking for the purpose of examination or painting bottom, or by any other | 188 |
|  | similar _whatsoever_ cause preventing the full working of the vessel, the payment of hire and | 189 |
|  | overtime, if any, shall cease for the time thereby lost. Should the vessel deviate | 190 |
|  | or put back during a voyage, contrary to the orders or directions of the | 191 |
|  | Charterers, for any reason other than accident to the cargo, the hire is to be | 192 |
|  | suspended from the time of her deviating or putting back until she is again in | 193 |
|  | the same or equidistant position from the destination and the voyage resumed | 194 |
|  | therefrom. All fuel used by the vessel while off hire shall be for Owners' | 195 |
|  | account. _Bunker consumed during off hire for whatsoever reason shall be calculated at Charter Party prices to_ | 196 |
|  | _apply._ In the event of the vessel being driven into port or to anchorage | |
|  | through stress of weather, trading to shallow harbors or to rivers or ports with | 197 |
|  | bars, any detention of the vessel and/or expenses resulting from such deten- | 198 |
|  | tion shall be for the Charterers' account. If upon the voyage the speed be | 199 |
|  | reduced by defect in, or breakdown of , any part her hull, machinery or | 200 |
|  | equipment, the time so lost, and the cost of any extra fuel consumed in | 201 |
|  | consequence thereof, and all extra _directly related_ expenses shall be deducted from the hire. | 202 |
| **Total** | 16. Should the vessel be lost, money paid in advance and not earned | 203 |
| **Loss** | (reckoning from the date of loss or being last heard of) shall be returned to the | 204 |
|  | Charterers at once. | 205 |
| **Exceptions** | The act of God, enemies, fire, restraint of princes, rulers and people, | 206 |
|  | and all dangers and accidents of the seas, rivers, machinery, boilers and steam | 207 |
|  | navigation, and errors of navigation throughout this Charter, always mutually | 208 |
|  | expected. | 209 |
| **Liberties** | The vessel shall have liberty to sail with or without pilots, to tow and | 210 |
|  | to be towed, to assist vessels in distress, and  to deviate for the purpose of | 211 |
|  | saving life and property. | 212 |
| **Arbitration** | 17. Should any dispute arise between owners and the Charterers, the | 213 |

|  |  |  |
|---|---|---|
|  | matter in dispute shall be referred to three persons at *London in accordance with English law, Arbitration to be settled according to L.M.A.A.* ~~New York~~, one to be | 214 |
|  | appointed by each of the parties hereto, and the third by the two so chosen ; | 215 |
|  | their decision, or that of any two of them, shall be final and for the purpose of | 216 |
|  | enforcing any award this agreement may be made a rule of the Court. The | 217 |
|  | arbitrators shall be commercial men conversant with shipping matters. | 218 |
| **Liens** | 18. the Owners shall have a lien upon all cargoes and all sub-freights for | 219 |
|  | any amounts due under this Charter, including general average contributions, | 220 |
|  | and the Charterers shall have a lien on the ship for all monies paid in advance | 221 |
|  | and not earned, and any overpaid hire or excess deposit to be returned at once. | 222 |
|  | Charterers will not suffer, nor permit to be continued, any lien or encumbrance | 223 |
|  | incurred by them or their agents, which might have priority over the title and | 224 |
|  | interest of the Owners in the vessel. | 225 |
| **Salvage** | 19. All derelicts and salvage shall be for Owners' and Charterers' equal | 226 |
|  | benefit after deducting Owners' and Charterers' expenses and crew's propor- | 227 |
|  | tion. | 228 |
| **General Average** | General average shall be adjusted, according to York- Antwerp Rules | 229 |
|  | 1974 *as amended in 1994 and subsequent amendments in London* ~~at such port or place in the United states as may be selected by the~~ | 230 |
|  | ~~Owners and as to matters not provided for by these Rules, according to the~~ | 231 |
|  | ~~laws and usage at the port of New York. In such adjustment disbursements in~~ | 232 |
|  | ~~foreign currencies shall be exchanged into United States money at the rate~~ | 233 |
|  | ~~prevailing on the dates made and allowances for damage to cargo claimed in~~ | 234 |
|  | ~~foreign currency shall be converted at the rate prevailing on the last day of~~ | 235 |
|  | ~~discharge at the port or place of final discharge of such damaged cargo from~~ | 236 |
|  | ~~the ship.~~ Average agreement or bond and such additional security, as may be | 237 |
|  | required by the Owners, must be furnished before delivery of the goods. Such | 238 |
|  | ~~cash deposit~~ *security acceptable to the Owners* as the Owners or their agents may deem sufficient as additional | 239 |
|  | security for the contribution of the goods and for any salvage and special | 240 |
|  | charges thereon, shall, if required, be made by the goods, shippers, consign- | 241 |
|  | ees or owners of the  goods to the Owners before delivery. Such ~~deposit~~ *security acceptable to the Owners* shall, | 242 |
|  | at the option, of the Owners, be payable in United States money and ~~remitted~~ *sent* to | 243 |
|  | the adjustor. ~~When so remitted the deposit shall be held in a special account at~~ | 244 |
|  | ~~the place of adjustment in the name of the adjuster pending settlement of the~~ | 245 |
|  | ~~general  average and refunds or credit balances, if any, shall be paid in United~~ | 246 |
|  | ~~States money.~~ | 247 |
| **York- Antwerp Rules** | Charterers shall procure that all bills of lading issued during the cur- | 248 |
|  | rency of the Charter will contain a provision to the effect that general average | 249 |
|  | shall be adjusted according to York-Antwerp Rules 1974 *as amended 1994 and subsequent amendments in* | 250 |
|  | *London,* and will include the | |
|  | "New Jason Clause " as per Clause 23. | 251 |
| **Drydocking** | 20. ~~The vessel was last drydocked~~    *Also See Clause 75.*                              The | 252 |
|  | Owners shall have the option to place the vessel in drydock during the cur- | 253 |
|  | recy of this Charter at a convenient time and place, to be mutually agreed | 254 |
|  | upon between Owners and Charterers, for bottom cleaning and painting | 255 |
|  | and/or repair as required by class or dictated by circumstances. Payment of | 256 |
|  | hire shall be suspended upon deviation from Charterers' service until vessel is | 257 |
|  | again placed at Charterers disposal at a point not less favorable to Charterers | 258 |
|  | than when the  hire was suspended | 259 |
|  |  | 260 |
|  |  | 261 |
| **Cargo Gear** | 21.Owners shall maintain the cargo handling gear of the ship which as | 262 |
|  | follows : | 263 |
|  |  | 264 |
|  |  | 265 |
|  | providing gear (for all derricks or cranes) capable of lifting capacity as de- | 266 |
|  | scribed,. Owners shall also provide on the vessel for night work *sufficient* lights as on | 267 |
|  | board, but all additional lights over those on board shall be at Charterers' | 268 |
|  | expense. The Charterers shall have the use of any gear on board the vessel. If | 269 |
|  | required by Charterers, the vessel shall work night and day and all cargo | 270 |
|  | handling gear shall be at Charterers' disposal during loading and discharging | 271 |

| | | |
|---|---|---|
| Stevedore Stand-by | in the event of disabled cargo handling gear, or insufficient power to operate | 272 |
| | the same, the vessel is to be considered to be off hire to the extent that time is | 273 |
| | actually lost to the Charterers and Owners to pay stevedore stand by charges | 274 |
| | occasioned thereby. If required by the Charterers, the Owners are to bear the | 275 |
| | cost of hiring shore gear in lieu thereof.  *__In which case vessel will remain on-hire.__* | 276 |
| Crew Overtime | ~~22. In lieu of any overtime payments to officers and crew for work ordered~~ | 277 |
| | ~~by Charterers or their agents, Charterers shall pay Owners $~~ | 278 |
| | ~~per month or pro rata.~~ | 279 |
| Clauses Paramount | 23. The following clause is to be included in all bills of lading issued | 280 |
| | hereunder: | 281 |
| | This Bill of Lading shall have effect subject to the provisions of the | 282 |
| | Carriage of Goods by Sea Act of the United States, the Hague Rules, or the | 283 |
| | Hague Visby Rules, as applicable, or such other similar national legislation as | 284 |
| | may mandatorily apply by virtue of origin or destination of the bills of lading, | 285 |
| | which shall be deemed to be incorporated herein and nothing herein con- | 286 |
| | tained shall be deemed a surrender by the carrier of any of its rights or | 287 |
| | immunities or an increase of any of its responsibilities or liabilities under said | 288 |
| | applicable Act. If any term of this bill of lading be repugnant to said applicable | 289 |
| | Act to any extent, such term shall be void to that extent, but no further. | 290 |
| | This Charter is subject to the following clauses all of which are to be | 291 |
| | included in all bills of lading issued hereunder : | 292 |
| New Both-to-Blame Collision Clause | If the ship comes into collision with another ship as a result of the | 293 |
| | negligence of the other ship and any act, neglect or default of the master, | 294 |
| | mariner, pilot or the servants of the carrier in the navigation or in the manage- | 295 |
| | ment of the ship. the owners of the goods carried hereunder will indemnify the | 296 |
| | carrier against all loss or liability to the other or non-carrying ship or her | 297 |
| | owners insofar as such loss or liability represents loss of, or damage to, or any | 298 |
| | claim whatsoever of the owners of said goods, paid or payable by the other or | 299 |
| | non-carrying ship or her owners to the owners of said goods and set off, | 300 |
| | recouped or recovered by the other or non-carrying ship or her owners as part | 301 |
| | of their claim against the carrying ship or carriers. | 302 |
| | The foregoing provisions shall also apply where the owners, operators | 303 |
| | or those in charge of any ships or objects other than, or in addition to, the | 304 |
| | colliding ships or objects are at fault in respect to a collision or contact. | 305 |
| New Jason Clause | In the event of accident, danger, damage or disaster before or after | 306 |
| | commencement of the voyage resulting from any cause whatsoever, whether | 307 |
| | due to negligence or not, for which, or for the consequences of which, the | 308 |
| | carrier is not responsible, by statute, contract, or otherwise, the goods, ship- | 309 |
| | pers, consignees, or owners of the goods shall contribute with the carrier in | 310 |
| | general average to the payment of any sacrifices, losses or expenses of a | 311 |
| | general average nature that may be made or incurred, and shall pay salvage | 312 |
| | and special charges incurred in respect of the goods. | 313 |
| | If a salving ship is owned or operated by the carrier, salvage shall be | 314 |
| | paid for as fully as if salving ship or ships belonged to strangers. Such deposit | 315 |
| | as the carrier or his agents may deem sufficient to cover the estimated con- | 316 |
| | tribution of the goods and any salvage and special charges thereon shall, if | 317 |
| | required, be made by the goods, shippers consignees or owners of the goods | 318 |
| | to the carrier before delivery. | 319 |
| War Clauses | ~~(a) No contraband of war shall be shipped. Vessel shall not be re~~ | 320 |
| | ~~quired, consent of Owners, which shall not be unreasonably~~ | 321 |
| | ~~withheld, to enter any port or zone which is involved in a state of war, warlike~~ | 322 |
| | ~~operations, or hostilities, civil strife, insurrection or piracy whether there be a~~ | 323 |
| | ~~declaration of war or not, where vessel, cargo or crew might reasonably be~~ | 324 |
| | ~~expected to be subject to capture, seizure or arrest, or to a hostile act by a~~ | 325 |
| | ~~belligerent power (the term "power" meaning any do jure or do facto authority~~ | 326 |
| | ~~or any purported governmental organization maintaining naval, military or air~~ | 327 |
| | ~~forces),~~ | 328 |
| | ~~(b) If such consent is given by, Owners Charterers will pay the provable~~ | 329 |
| | ~~additional cost of insuring vessel against hull war risks in an amount equal to~~ | 330 |
| | ~~the value under her ordinary hull policy but not exceeding a valuation of~~ | 331 |
| | ~~_____.  In addition, Owners may purchase and Charterers~~ | 332 |

will pay for war risk insurance on ancillary risks such as loss of hire, freight ~~333~~
disbursements, total loss, blocking and trapping, etc. If such insurance is not ~~334~~
obtainable commercially or through a government program, vessel shall not ~~335~~
be required to enter or remain at any such port or zone. ~~336~~
~~© In the event of the existence of the conditions decried in (a)~~ 337
~~subsequent to the date of this Charter, or while vessel is on hire under this~~ 338
~~Charter, Charterers shall, in respect of voyages to any such port or zone~~ 339
~~assume the provable additional cost of wages and insurance properly incurred~~ 340
~~in connection with master, officers and crew as a consequence of such war,~~ 341
~~warlike operations or hostilities.~~ **_See Clause 66_** 342

**Ice**            24. The vessel shall not be required to enter or remain in any icebound port    343
or area, nor any port or area where lights or lightships have been or are about    344
to be withdrawn by reason of ice, nor where there is risk that in the ordinary    345
course of things the vessel will not be able on account of ice to safely enter and    346
remain in the port or area or to get out after having completed loading or    347
discharging.    348

**Navigations**    25. Nothing herein stated is to be construed as a demise of the vessel to the    349
Time Charterers. The Owners shall remain responsible for the navigation of the    350
vessel, act of pilots and tug boats, insurance, crew, and all other similar.    351
matters, same as when trading for their own account.    352

**Commissions**    26. A commission of _**1.25**_ percent is payable by the vessel    353
and Owners to _**MERIT INTERNATIONAL L.L.C.**_    354
    355
on hire eared and paid under this Charter, and also upon any continuation or    356
extension of this Charter.    357

**Address**    27. An address commission of _**.3.75**_____ percent    358
is payable to _**Charterers**_    359
    360
on hire earned and paid under this Charter.    361

**Rider**    Rider Clauses _**Nos. 28 to 94,**_ as at-    362
tached hereto are incorporated in this Charter.    363

## M.V. " PEARL OF SHARJAH " CHARTER PARTY  DATED 21ST JUNE 2006

**Clause 28:**

VESSEL DESCRIPTION
==================
NAME: PEARL OF SHARJAH
FLAG: CYPRUS
PORT OF REG:
BUILT WHEN AND WHERE: 1983 / Japan
TDWT: 65,889mt / sdwt  64,169mt
DRAFT: 12.963    SSW
TYPE:  ST SD BC WITH UNOBSTRUCTED MH STOWAGE ONLY AND FULLY WORKING
GEAR/GRABS FULY SUITABLE INTENDED CARGO.
LOA : 224.50 M
BEAM: 32.20 M
GEAR: CRANES 4 X 25 T
GRABS 1 x 10cbm (Max load 10mt), 3 X 8 cbm (Max Load 12.5mt)
HO/HA: 7/7
CLASS SOC: Lloyds
P+I CLUB: North of England
TYPE OF HATCH COVERS: MacGregor Single Pulling Chain drive End Opening
HATCH COVER SIZES:
1 15.4 X 13.2 mtr
2 15.2 X 13.2 mtr
3 15.2 X 13.2 mtr
4 15.2 X 13.2 mtr
5 15.2 X 13.2 mtr
6 15.2 X 13.2 mtr
7 15.2 X 13.2 mtr
WLTHC: REVERTING
TPI/TPC: 157.45LT / 63.38mt
SATCOM TLX: 420969040
CALL SIGN:  P3LR9
RADIO STN:  Singtel
NATIONAL NT/GT: 21282.00/35208.00
PANAMA NT/GT: 30065.90/36705.95
SUEZ NT/GT: 31835.36/36384.16

BUNKER CAPACITY BY TANK BREAKDOWN : (100%)
   IFO ABT 2979.5 CBM / MDO ABT 216.5 CBM

Bunker Capacity
        Fuel oil Basis 0.935, DO Basis 0.880

| Tank | Full Capcity (CBM) | Weight MT (96%) |
|------|--------------------|-----------------|
| No. 1 FOT | 431.3 | 387.1 |
| No. 2 FOT | 431.3 | 387.1 |
| No. 3 FOT | 431.3 | 387.1 |
| No. 4 FOT | 431.3 | 387.1 |
| No. 5 FOT | 431.3 | 387.1 |
| No. 6 FOT | 287.8 | 258.3 |
| No. 7 FOT (P&S) | 2 X 267.6 | 2 X 240.2 |
| Total | 2,979.5 CBM | 2,674.2 mt |
| DOT (P) 81.5 | | 68.9 |
| DOT (S) 135.0 | | 114.0 |
| 216.5 | | 182.9 |

## M.V. " PEARL OF SHARJAH " CHARTER PARTY  DATED 21ST JUNE 2006

===================================================================

CONSTANTS EXCL FW : ABT 425 mt
UNPUMPABLES IF NOT INCLUDED IN CONSTANTS : ABT 100 MTS

FW CAPACITY :  ABT 437 mt
CO2 FITTED IN HOLDS : NO
TYPE OF VENTILATION : NATURAL
ENGINE MAKE/SIZE/RPM : Hitachi-Sulzer/ 6RND 76M Max BHP Output 13500/
RPM 101

IMO Number: 8105636

HOLD CAPACITY

1 10235.4 cbm
2 10790.1 cbm
3 10841.1 cbm
4 10680.6 cbm
5 10601.7 cbm
6 10805.2 cbm
7 10741.3 cbm

TTL: 2637844 CBF / 74697.4 M3

ALL SPACE IS SPACE GUARANTEED SUITABLE FOR GRAB DISCHARGE AND
AVAILABLE IN UNOBSTRUCTED CLEAR MAIN HOLDS ONLY ALL FULLY SUITABLE FOR
BULLDOZER DISCHARGE.

SPEED AND CONSUMPTIONS
==========================
AT SEA
BALLAST: ABT 13 Knots on ABT 30MT IFO(180 CST) + ABT 1.5 MT.IFO + ABT
1.5 MT MDO
LADEN: ABT 13 Knots on ABT 32 MT IFO(180 CST) + ABT 1.5 MT IFO + ABT 1.5

MT MDO

IN PORT
IDLE:  ABT 3 MT IFO  +  ABT 1.8 MT MDO
GEAR  WORKING ABT 3.5 MT IFO  +  ABT 1.8 MT MDO

SERVICE SPEED IS BSS GOOD WEATHER CONDITIONS AND UP TO BEAUFORT FORCE 4
CALCULATION OF VESSELS PERFORMANCE ON BOTH LADEN AND BALLAST PASSAGES
HAS TO
BE BASED UPON AN AVERAGE SPEED/CONSUMPTION DURING WEATHER DAYS UPTO
BEAUFORT
4. LADEN OR BALLAST SPEED AND CONSUMPTION FOR PERIOD OF WEATHER IN XSS
OF
BEAUFORT 4 AND OR DOUGLAS SEASTATE 3 IS TO BE EXPRESSLY EXCLUDED FROM
CALCULATIONS.

OWNERS LIBERTY TO USE MDO FOR MANOUVERING AND IN CONFINED/
RESTRICTED WATERWAYS AND IN COLD WEATHER FOR BOILER/ HEATING.

ALL DETS GIVEN IN GOOD FAITH, 'ABOUT'

*M.V. " PEARL OF SHARJAH " CHARTER PARTY  DATED 21ST JUNE 2006*

==================================================================

**Clause 29: LAYDAYS / CANCELLING:**
Laycan: 01ST / 10th  JULY, 2006, BASED ON LOCAL TIME.
Owners to give 5 days approximate notice of delivery and 3/2 days definite notice of delivery.

**Clause 30: PERMITTED CARGOES:**
Coal (however Indian coal excluded), wheat, HSS, SBM, iron ore, steel products (however scrap excluded), bauxite, bulk harmless fertiliser, phosrock, gypsum.

No deck cargo allowed.

Petcoke allowed however, Charterers to supply and pay for chemicals for cleaning as per Master's request (and calcined petcoke always excluded).

Aggregates allowed within the A.G. however, not more than two consecutive voyages allowed.

Indonesian Coal Coastal Trade and Indian Coastal Trade allowed but not more than two consecutive voyages allowed each time.

Petcoke not to be last cargo under this Charter.

**Clause 31: Deleted.**

**Clause 32: Deleted.**

**Clause 33:**
Charterers option to discharge by excavators which Charterers confirm are steel/chain type only and will always be subject to permissible deck strengths of vessel and subject to master's approval considering the safety and stability of the vessel.

**Clause 34: WAR RISK INSURANCE / BONUS ETC:**
Basic war risk insurance premium for Worldwide trading shall be for Owners' account and increased premium and extra expenses incurred to the Owners due to the vessel's trading to the restricted area shall be for the Charterers' account in accordance with CONWARTIME 1993.

**Clause 35: ISRAEL CALL AND ARAB BLACK LIST:**
The Owners guarantee that neither the vessel nor any other vessel owned, managed and controlled by them has ever traded to an Israeli port and will not call at any such port prior to or during the charter. The Owners also guarantee that neither the vessel nor any other vessel owned, managed and controlled by them is blacklisted by any Arab country.

**Clause 36: Deleted.**

**Clause 37: ITF:**
The vessel to be manned under ITF complied or ITF free (as national flag vessel) conditions during the whole Charter period.

**Clause 38: FLAG / BOYCOTT:**
Basically the vessel will fly the Panamanian Flag, but the Owners have the right to take another flag. The vessel's flag and crew shall be within the Owners' own discretion, but the vessel will be operated with fully ITF in order. In the event of vessel being subjected to boycott, being delayed or rendered inoperative by strikes, labour stoppages or any other difficulties arising from vessel's flag, ownership, crew or terms of employment of crew, such time loss to be considered off-hire and any expenses directly related or costs incurred thereby to be for Owners' account.

*M.V. " PEARL OF SHARJAH " CHARTER PARTY DATED 21ST JUNE 2006*

===============================================================

**Clause 39: GRACE PERIOD:**
Where there is failure to make "punctual and regular payment" of hire, the Charterers shall be given by the Owners three clear banking days (as recognized at the agreed place of payment) written notice to rectify the failure, and when so rectified within those three days following Owners' notice, the payment shall stand as regular and punctual.

**Clause 40: EXTENUATION OF OFF-HIRE PERIOD:**
Should the vessel be placed off-hire during the currency of the Charter for any reason whatsoever, the Charterers have the option of adding all or any part of such off-hire period to the original period and to any of the extended periods by giving notice to the Owners at least 30 days before the expiration of the original period. This shall not affect the Charterers obligation to give re-delivery notice of the vessel. The Charterers are in any event required to give re-delivery notice at least 30 days prior to the intended actual re-delivery time.

**Clause 41: WAR CANCELLATION:**
If war or hostilities break out between any two or more of the following countries:-

The United States of America, Russia, EEC Countries, The People's Republic of China and Japan - both Owners and Charterers shall have the right to cancel this charter, provided always that action undertaken for the United Nations (or other supernational organization) by the armed forces of any of the countries listed shall be deemed to be the action of that country.

**Clause 42: REQUISITION:**
Should the vessel be requisitioned by the government of the vessel's during the period of the charter, the vessel shall be deemed to be off-hire during the period of requisition and any hire paid by the said government, in respect of such requisition period shall be retained by the Owners. If the period of requisition exceeds 3 months, Charterers shall have the option of canceling this Charter and no consequential claim may be made by either party. The period during which the vessel is on requisition shall count as part of the period provided for this charter.

**Clause 43: DERATTING CERTIFICATE:**
The vessel shall be delivered with valid deratting or deratting exemption certificate, if such certificate does not cover the whole period of this charter, costs of renewal of certificate and fumigation if necessary shall be for Owners' account. For the vessel's first call at the Japanese port, the sanitary inspection shall be carried out at the Charterers' time and Owners' expenses. However should such inspection interfere the vessel's operation, it shall be carried out at the Owners' time and expenses.

**Clause 44: QUARANTINE:**
Normal quarantine time and expenses for the vessel's entering port shall be for Charterers' account, but any time of detention and expenses for quarantine due to pestilence, illness and etc., of Master, Officers and Crew shall be for Owners' account. Any detention due to ports called or cargoes carried to be for Charterers' account.

**Clause 45: HEALTH CERTIFICATE:**
The vessel shall be in possession of necessary certificates to comply with safety and health regulations and all current requirements at all ports of call during this charter. The Master, Officer and Crew of the vessel hold vaccination certificates against yellow fever, cholera, etc.

**Clause 46: Deleted.**

**Clause 47: CARGO GEAR AND EQUIPMENT:**

The vessel's cargo gear and other equipments shall comply with regulations and/or requirements in effect at port or ports of call and canals and countries in which the vessel will be employed. The Owners also guarantee that the vessel shall be at all times in possession of valid and up-to-date certificate on board to comply with such regulations and/or requirements. A particular reference is made to the U.S. Department of Labour Safety and Health Regulations set forth in Part III Code of the Federal Regulations and all Australian Navigation (Loading and Unloading Safety Measures) Regulations, 1961 or any amendments thereto and related Requirements and Recommendations.

If stevedores, longshoremen or other labours are not permitted to work by reason of any failure of the Master, the Owners and/or their agents to comply with such regulations or by reason that the vessel is not in possession of such valid and up-to-date certificates, then the Owners shall make immediate corrective measures. The Charterers may suspend hire for time directly lost thereby and the Owners to be liable for any additional costs directly related incurred thereby.

## Clause 48: WWF REQUIREMENT:
The Owners guarantee that the construction of the vessel with her cargo gear, fitting and other equipments shall comply with the requirements within trading areas.

## Clause 49: STEVEDORE DAMAGE:

Charterer to remain ultimately responsible for all stevedore damages and master to notify Charterer's, stevedores or their agents in writing, if possible at the time of occurrence or within 24 hours of the occurrence or as soon as possible thereafter, but latest when the damage could have been discovered by the exercise of due diligence. The master shall use his best efforts to obtain written acknowledgement by responsible parties causing damages, unless damage should have been made good in the meantime.

Stevedore's damage affecting seaworthiness or the proper working of the vessel including her cargo handling capability and/or equipment shall be repaired without delay to the vessel, after each occurrence in Charterer's time and shall be paid for by Charterer's, repairs of stevedore's damage not affecting seaworthiness shall be done at the same time.  Subject to Owners' agreement and provided always that class also consents, where it is involved, repairs may be deferred and stevedore damages to vessel or its equipment, shall be repaired whilst the vessel is next in dry-dock in the Owner's time, provided this does not interfere with Owner's repair work or by the vessel's crew at the Owner's convenience.  All costs of such repairs shall be for Charterer's account.  The Charterer's shall pay for stevedore's damage whether or not payment has been made by stevedores to the Charterer's.

## Clause 50: P.&I. CLUB:
The Owners guarantee that the vessel shall be fully covered by P. & I Club: (North of England). Charterers have the benefit of Owners' P. & I. cover so far as Club rules permit.

## Clause 51: SERVICE OF AGENT:
The agents appointed by the Charterers shall perform all normal services to the vessel and Master at no extra agency fee to the Owners except in cases when replacement of crew or major repairs or other major Owners' matters are required.

## Clause 52: DEDUCTIONS:
See Clause 5.

## Clause 53: Deleted.

## Clause 54: JOINT-ON/OFF HIRE SURVEY:
Joint On-Hire Survey to be held at delivery port for Bunker and Condition Survey to ascertain delivery figure with Owners time.

**_M.V. " PEARL OF SHARJAH " CHARTER PARTY DATED 21ST JUNE 2006_**

Joint Off-Hire Survey to be carried out on redelivery to ascertain the vessel's condition and quantity of bunkers remaining on board with Charterers time, costs for such survey to be equally shared between the Owners and the Charterers.

**Clause 55: ELEGIBILITY FOR BUNKERING:**
The Owners guarantee that the vessel is eligible for bunkers in Singapore, Indonesia, Taiwan but always according to grade specified.

**Clause 56: REPLENISHMENT OF BUNKERING:**
Replenishment of bunkers is arranged and paid for by the Charterers. The Master shall pay due diligence for replenishment of bunkers so as not to cause oil spillage while bunkering.
Bimco bunker sulphur content clause to apply.

**Clause 57: OIL POLLUTION:**
Owners are required to establish and maintain financial security for responsibility in respect of oil or other pollution damage as required by any government, including federal, state, or municipal or other division or authority thereof, to enable the vessel, without penalty or charge, lawful to enter, remain at or leave any port, place, territorial or contiguous waters or any country, state or municipality in performance of this charter without any delay. This obligation shall apply whether or not such requirements have been lawfully imposed by such government or division or authority thereof. Owners shall make and maintain all arrangements by bond or otherwise as may be necessary to satisfy such requirements at the Owners' sole expense and Owners shall indemnify Charterers against all consequences (including loss of time) of any failure or inability to do so.

**Clause 58: CAPTURE, SEIZURE, ARREST:**
Should the vessel be captured or seized or detained or arrested by any authority or by any legal process during the currency of this Charter Party, the payment of hire shall be suspended until the time of her release and any extra expenses incurred by and/or during above capture, or seizure or detention or arrest. shall be for Owners' account, unless such capture or seizure or detention or arrest is occasioned by any personal act or omission or default of the charterers or their agents or by reason of cargo or calling port or trading under this charter.

**Clause 59: SMUGGLING:**
Any delay, expenses and/or fine incurred on account of smuggling shall be for Owners' account if caused by the Officers and/or crew, or shall be for Charterers' account, if caused by the Charterers' supercargo and/or their staff or agents.

**Clause 60: HOLD CLEANING:**
Vessel's holds on arrival at first loading port to be clean swept, washed down by freshwater and dried up so as to receive Charterers' intended cargo of harmless coal in all respects, to the satisfaction of Shippers' independent survey and if vessel fails to pass any hold inspection as above, the vessel should be placed off-hire until the vessel passes the same inspection again. If holds pass partially then off-hire to be on pro rata basis.

**Clause 61: HOLD CONDITION ON REDELIVERY:**
Charterers to have the Option to redeliver the vessel with holds as left by stevedores against paying Owners US$ 4,250 lumpsum including removal of debris.

**Clause 62: GANGWAY WATCHMEN:**
Gangway watchmen, if compulsory, shall be borne by Charterers and if not compulsory, shall be at Owners' account.

=========================================================================

**Clause 63: PREPERATION FOR LOADING / DISCHARGING:**
Opening and closing of all hatches and rigging of cargo gear before vessel's arrival at loading and discharging berths shall be performed by the Officers and crew free of expenses to the Charterers unless prohibited by the port regulations.

**Clause 64: Deleted.**

**Clause 65: LUMPSUM AMOUNT FOR CABLE / ENTERTAINMENT:**
Charterers to pay the Owners US$ 1,250 monthly / pro rata in lieu of all radio telegrams, telephone calls, etc., for the Charterers business and also all entertainment fee including victualling incurred through ordinary course of the vessel's operation for Charterers' account.

**Clause 66: PARAMOUNT CLAUSE:**
The Carriage of Goods by Sea Act of the United States, the Hague Rules, or the Hague-Visby Rules, as applicable, or such other similar international / national legislation as may mandatorily apply by virtue of origin or destination of the Bills of Lading, New both-to-blame collision clause and New Jason Clause, shall be deemed to be incorporated herein and shall be contained in Bills of Lading unless otherwise agreed between the Owners and the Charterers, the vessel shall not be required to trade beyond what is written in this clause, even if there is any discrepancies between war clauses of this Charter Party and Bills of Lading. Charterers may from time to time contact Owners for acceptance to insert alternative clause to the above. Such acceptance shall not be unreasonably withheld.

Bills of Lading shall be deemed to contain Conwar 1993.

**Clause 67: DIESEL OIL**
See the vessel's description.

**Clause 68: Deleted.**


**Clause 69: BUNKER QUALITY**
Bunker Quality Control Clause for Time charters:

1) The Charterers shall supply bunkers of the following specifications:
   IFO 380 CST, related to ISO 8217 : 1996 (E) RMH 35
   MDO DMB, related to ISO 8217 : 1996 (E)


2) At the time of delivery of the vessel the Owners shall place at the disposal of the Charterers, the bunker delivery note(s) and any samples relation to the fuels existing on board.

Charterers option to supply bunker IFO 180 CST at Taiwan but RME 25.

**Clause 70: CARGO CLAIM**
Liability for cargo claim shall be borne by the Owners and the charterers in          accordance with the Interclub New York Produce Exchange Agreement 1996 any subsequent amendments.

**Clause 71: Deleted.**

**Clause 72: CREW FOR CRANES:**
Charterers always to provide skilled shore labour for crane operation.

*M.V. " PEARL OF SHARJAH " CHARTER PARTY  DATED 21ST JUNE 2006*

=================================================================

**Clause 73:**
On delivery all cargo holds to be completely clean swept washed down by fresh water and dried up and fully ready to receive Charterers intended cargoes in all respects, free of salt and previous cargo residue and should pass independent surveyor's inspection otherwise vessel to be put off-hire from the time of failing until the time of passing re-inspection and any time lost/directly related expenses incurred thereby to be for Owners account.  In case the vessel loads in other holds which have passed the inspection, then off-hire to be pro rata.

**Clause 74: Deleted.**

**Clause 75: DRYDOCKING:**
Drydocking only in case of emergency.

**Clause 76: ITINERARY**
As far as known, the Charterers shall give the information of vessel's itinerary, kind of cargoes and names of agents at port of call to the Owners upon Owners' request.

**Clause 77: DISABILITY OF CRANES**
In the event of disabled cranes or insufficient power to operate same, the vessel is to be considered off-hire, calculated proportionally to the number of working hatches for all time the gear is unavailable due to disability or loss of power.

If the vessel is detained as a result of disabled gear and such detention or loss of time  would not have occurred had the gear been available at all times then the payment of hire to be adjusted accordingly as per Clause 15.

If due to such disability or breakdown, shore cranes are employed, Owners are to bear  any additional cost so involved, but such case vessel only to be off-hired for time actually lost.

It is however understood Owners and Charterers shall co-operate best possible to limit such off-hire/detention.

The Charterers only to deduct agreed off-hire amount from their hire payment.

**Clause 78: SHIP TO SHIP OPERATION:**
The Charterers have the privilege of ordering the vessel to lie alongside another vessel and/or craft at a safe anchorage in order to transfer cargo or for any other purposes provided port authorities permit. Such operation to be carried out always under the supervision and discretion of the Master regarding general safety, who may at any time order the vessel and/or coaster and/or lighter away from his vessel or remove his own vessel in case of any danger.

Charterers to supply sufficient fenders at their expenses and to indemnify Owners / vessel from all cargo claims subsequent to this operation and also from any damages to the vessel arising therefrom.

Charterers will be allowed to use mooring lines as on board by replacing such mooring lines if its are seriously damaged.  If ship's net is required by local authority, same to be provided and paid by Charterers.

**Clause 79: SLOWSTEAMING:**
The Charterers to have the privilege of slow steaming the vessel at any speed acceptable to the vessel's machinery and hull

*M.V. " PEARL OF SHARJAH " CHARTER PARTY  DATED 21ST JUNE 2006*

=============================================================

**Clause 80: GRAB DISCHARGE:**
The Owners guarantee that the vessel is suitable for grab loading/discharge.

**Clause 81: SUPERCARGO:**
The Charterers or their supercargo shall be allowed to access to engine-room and bridge with the consent of Master which shall not be unreasonably withheld without interference of vessel's operation.

**Clause 82: RETURN OF INSURANCE PREMIUM:**
The Charterers to have the benefit of any return insurance premium received by the Owners from underwriters (as and when received from underwriters) by reason of vessel being in port for a minimum of 30 days, if vessel is on hire.

**Clause 83: GOOD WEATHER CONDITIONS:**
See the vessel's description

**Clause 84: CARGO RELEASE CLAUSE:**
If original Bill(s) of Lading are not available at discharge port, Owners allow Charterers to discharge entire cargoes against Charterers' presentation of Letter of Indemnity signed by Charterers' authorised signatory only with wording provided by Owners' P and I Club.

Charterers and/or their agents have option to sign Bill(s) of Lading on behalf of Master.  Charterers will indemnify Owners for all costs and consequences arising out of Charterers or their agents acting with their above mentioned authorities.  Bill(s) of Lading to have the approval of the Owners within 1 working day before being released.  Bill(s) of Lading to be issued strictly in accordance as per mates receipt on behalf of the master.

**Clause 85: BUNKER CLAUSE:**
Bunkers on delivery quantity about 500/600 MTS IFO and about 35/55 MTS MDO.
Bunker prices: USD350.00 per MT for IFO and USD650.00 per MT for MDO at both ends.
Bunkers on redelivery to be about 750MT IFO, about 100MT MOD.

Charterers/Owners allowed to replenish additional bunkers if necessary at yard/last discharging port before delivery/redelivery at Charterers/Owners account provided the same does not interfere with proper operation of the vessel.

**Clause 86: ISM CODE:**
During the currency of this Charter Party, the Owners shall procure that the vessel and "the Company" (as defined by the ISM Code) shall comply with the requirements of ISM Code.

Upon request, the Owners shall provide a copy of relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by the failure on the part of "the Company" to comply with the ISM Code shall be for the Owners account.

**Clause 87: WAR RISK:**
War Risk Clause to be "CONWARTIME 1993" (as per attached).

=================================================================

**Clause 88: Deleted.**

**Clause 89:**
No liner or through Bill(s) of Lading to be issued.  The new (second set) of Bills of Lading to be in conformity with the original (first set) of Bills of Lading except for the change of notifying party and/or the name of receiver and/or shipper.   Charterer's to indemnify the Owners for any and all risks/consequences thereof by issuing a Letter of Indemnity on the format required by Owners PNI Club.  The said Letter of Indemnity to be signed by a person no less than a director of the company and employed with the Charterers, specifying the name and designation and having the authority to issue such Letter of Indemnity.  Charterer's to forward to Owners, a full and complete set of the (in original) first set of Bills of Lading.  Upon Owners receipt of the above Letter and 1st set of Bills of Lading, then such switch Bill(s) of Lading can be issued at a mutually agreed/appointed agent's office, such switch Bills of Lading to have the approval of Owners' before being released.

**Clause 90:**
Charterers may supply Ocean Routes or any other routing agency advice to the Master during voyages specified by the Charterers. The Master is to comply with the report procedure of the routing service. Evidence of weather conditions shall be taken from the vessel's deck log and weather company reports. In the event of consistent discrepancies between the deck log and weather routing reports, the weather routing report shall be taken as binding.

**Clause 91: BIMCO U.S. CUSTOMS ADVANCE NOTIFICATION /AMS CLAUSE FOR TIME CHARTER PARTIES:**

a)    If the vessel loads or carries cargo destined for the U.S. or passing through U.S. Ports in transit, the charterers shall comply with the current U.S. Customs Regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purpose of such regulations and shall, in their own name, time and expense:
   i)    Have in place a SCAC (Standard Carrier Alpha Code);
   ii)   Have in place an ICB (International Carrier Bond);
   iii)  Provide the Owners with a timely confirmation of i) and ii) above; and
   iv)   Submit a cargo declaration by AMS (Automated Manifest System) to
         the U.S. Customs and provide the Owners at the same time with a copy
         thereof.
b)    The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of sub-Clause a) Should such failure result in any delay then, notwithstanding any provision in this charter party to the contrary, the vessel shall remain on hire.
c)    If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges which are solely the responsibility of the Owners, the Owners shall promptly reimburse the Charterers for those amounts.
d)    The assumption of the role of carrier by the Charterers pursuant to this Clause and for the purpose of the U.S. Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any Bill of Lading, other contract, law or regulation.

**Clause 92: BIMCO ISPS Clause for time charter parties:**
(a) (i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company".  Upon request the Owners shall provide a copy of the relevant International

*M.V. " PEARL OF SHARJAH " CHARTER PARTY  DATED 21ST JUNE 2006*

====================================================================

Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this clause shall be for the Owners' account.

(b) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

**Clause 93.   Bunker Fuel Sulphur Content Clause for Time Charter Parties 2005**

(a) Without prejudice to anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the Vessel, at all times, to comply with the maximum sulphur content requirements of any emission control zone when the Vessel is ordered to trade within that zone.

The Charterers also warrant that any bunker suppliers, bunker craft operators and bunker surveyors used by the Charterers to supply such fuels shall comply with Regulations 14 and 18 of MARPOL Annex VI, including the Guidelines in respect of sampling and the provision of bunker delivery notes.

The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to comply with this Sub-clause (a).

(b) Provided always that the Charterers have fulfilled their obligations in respect of the supply of fuels in accordance with Sub-clause (a), the Owners warrant that:

(i) the Vessel shall comply with Regulations 14 and 18 of MARPOL Annex VI and with the requirements of any emission control zone; and (ii) the Vessel shall be able to consume fuels of the required sulphur content when ordered by the Charterers to trade within any such zone.

*M.V. " PEARL OF SHARJAH " CHARTER PARTY DATED 21ST JUNE 2006*

================================================================

Subject to having supplied the Vessel with fuels in accordance with Sub-clause (a), the Charterers shall not otherwise be liable for any loss, delay, fines, costs or expenses arising or resulting from the vessel's failure to comply with Regulations 14 and 18 of MARPOL Annex VI.

(c) For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

**Clause 94.**

Time on delivery/redelivery to be based on Greenwich Meantime but lay/can based on local time.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**WAR RISK CLAUSE  (CONWARTIME 1993)**

(1)     For the purpose of this Clause, the words:

      (a)     "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master;

      and

    (b)     "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body terrorist or political group,  or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the vessel.

(2)     The Vessel unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks.  Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(3)     The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever, against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or confiscation.

*M.V. " PEARL OF SHARJAH " CHARTER PARTY  DATED 21ST JUNE 2006*

=================================================================

(4)    (a)    The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

(b)    If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

(5)    If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

(6)    The Vessel shall have liberty:
(a)    to comply with all orders, directions, recommendations or advice as to departure, arrival routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(b)    to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risk insurance;

(c)    to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d)    to divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier;

(e)    to divert and call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(7)    If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(8)    If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed.

************

# Exhibit D

2

**NCS**  NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD.

8 Temasek Boulevard, #37-03 Suntec Tower Three Singapore 038988

East International Limited London

| | |
|---|---|
| Statement Date | : 13Jul2008 |
| Statement No | : 13632 |
| Our Reference | : SPM06F002 |
| Payment No. | : 2 |

| | | DR | CR |
|---|---|---|---|
| BOR : 109.360 MT MDO @ 1,250.00 USD/MT FangCheng | 122,950.00 | | |
| Less of cleaning : ILOHO voy-1 | | 4,500.00 | |
| Surveys Reserve : ON HIRE SURVEY voy-1 | 150.50 | | |
| Surveys Reserve : OFF HIRE SURVEY voy-1 | 400.00 | | |
| Owners Disbursement Reserve : ESTIMATED OE voy-1 | 2,000.00 | | |
| Net Debits / Credits | | 852,950.52 | 953,150.02 |
| BALANCE DUE TO OWNERS | | 180,219.32 | |
| | | 953,150.02 | 953,150.02 |

REMITTANCE DATE : 13Jul2008

E.&O.E.

## 2ND HIRE STATEMENT

| | |
|---|---|
| O/F Date: | 13Jun2008 |
| Vessel: | Pearl Of Sharjah |
| Charterer: | North China Shipping (Singapore) PTE. LTD. |

NOTE: ALL VALUES ARE IN USD

| | DR | CR |
|---|---|---|
| Charter Hire: 1Jul2008 00:01 to 3Jul2008 20:12 (2.840972 Days) @ 55,000.00 USD Daily | | 105,253.47 |
| Address Commission of 3.750% | 5,939.51 | |
| C/VE: 1Jul2008 00:01 to 3Jul2008 20:12 (2.840972 Days) @ 1,250.00 USD per Average month | | 116.75 |
| Offhire at 43.500%: 26Jun2008 11:36 to 27Jun2008 9:26 (0.616667 Days) @ 55,000.00 USD Daily | 14,734.28 | |
| Address Commission of 3.750% | | 564.41 |
| Offhire CVE at 43.500%: 26Jun2008 14:36 to 27Jun2008 9:26 (0.616667 Days) @ 1,250.00 USD per Average month | 11.05 | |
| Offhire Bunkers (26Jun2008 14:36 to 27Jun2008 9:24) 1.660 MT IFO @ 625.00 USD/MT | 1,000.00 | |
| Offhire Bunkers (26Jun2008 14:36 to 27Jun2008 9:24) 1.620 MT IFO @ 1,250.00 USD/MT | 2,037.50 | |
| Offhire at 100%: 17Jun2008 12:15 to 17Jun2008 18:25 (0.256944 Days) @ 55,000.00 USD Daily | 14,131.94 | |
| Address Commission of 3.750% | | 529.95 |
| Offhire CVE at 100%: 17Jun2008 12:15 to 17Jun2008 18:25 (0.256944 Days) @ 1,250.00 USD per Average month | 10.69 | |
| Offhire Bunkers (17Jun2008 12:15 to 17Jun2008 18:25) 0.771 MT IFO @ 625.00 USD/MT | 481.88 | |
| Offhire Bunkers (17Jun2008 12:15 to 17Jun2008 18:25) 0.462 MT MDO @ 1,250.00 USD/MT | 577.50 | |
| Offhire at 100%: 17Jun2008 00:00 to 17Jun2008 6:42 (0.237500 Days) @ 55,000.00 USD Daily | 13,062.50 | |
| Address Commission of 3.750% | | 489.84 |
| Offhire CVE at 100%: 17Jun2008 00:00 to 17Jun2008 6:42 (0.237500 Days) @ 1,250.00 USD per Average month | 9.76 | |
| BOD : 1,043.347 MT IFO @ 625.00 USD/MT Muscat | 653,341.88 | |
| BOD : 709.916 MT MDO @ 1,250.00 USD/MT Muscat | 137,393.75 | |
| BOR : 1,064.710 MT IFO @ 625.00 USD/MT FangCheng | 665,443.75 | |

Continued...

# Exhibit E

1

 **NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD.**

8 Temasek Boulevard, #37-03 Suntec Tower Three Singapore 038988

East International Limited London

| | |
|---|---|
| Statement Date | : 7Jul2008 |
| Statement No | : 13632 |
| Our Reference | : SPM08F002 |
| Payment No. | : 2 |

## 2ND HIRE STATEMENT

| | |
|---|---|
| C/P Date: | 13Jun2008 |
| Vessel: | Pearl Of Sharjah |
| Charterer: | North China Shipping (Singapore) PTE. LTD. |

**NOTE ALL VALUES ARE IN USD**

| | DR | CR |
|---|---|---|
| Charter Hire: 1Jul2008 00:01 to 3Jul2008 20:12 (2.840972 Days) @ 55,000.00 USD Daily | | 156,253.47 |
| Address Commission of 3.750% | 5,859.51 | |
| CVE: 1Jul2008 00:01 to 3Jul2008 20:12 (2.840972 Days) @ 1,250.00 USD per Average month | | 116.75 |
| Offhire at 43.590% : 26Jun2008 14:36 to 27Jun2008 5:24 (0.616667 Days) @ 55,000.00 USD Daily | 14,784.28 | |
| Address Commission of 3.750% | | 554.41 |
| Offhire CVE at 43.590% : 26Jun2008 14:36 to 27Jun2008 5:24 (0.616667 Days) @ 1,250.00 USD per Average month | 11.05 | |
| Offhire Bunkers (26Jun2008 14:36 to 27Jun2008 5:24) 1.600 MT IFO @ 625.00 USD/MT | 1,000.00 | |
| Offhire Bunkers (26Jun2008 14:36 to 27Jun2008 5:24) 1.678 MT MDO @ 1,250.00 USD/MT | 2,097.50 | |
| Offhire at 100% : 17Jun2008 12:15 to 17Jun2008 18:25 (0.256944 Days) @ 55,000.00 USD Daily | 14,131.94 | |
| Address Commission of 3.750% | | 529.95 |
| Offhire CVE at 100% : 17Jun2008 12:15 to 17Jun2008 18:25 (0.256944 Days) @ 1,250.00 USD per Average month | 10.56 | |
| Offhire Bunkers (17Jun2008 12:15 to 17Jun2008 18:25) 0.771 MT IFO @ 625.00 USD/MT | 481.88 | |
| Offhire Bunkers (17Jun2008 12:15 to 17Jun2008 18:25) 0.462 MT MDO @ 1,250.00 USD/MT | 577.50 | |
| Offhire at 100% : 17Jun2008 00:00 to 17Jun2008 5:42 (0.237500 Days) @ 55,000.00 USD Daily | 13,062.50 | |
| Address Commission of 3.750% | | 489.84 |
| Offhire CVE at 100% : 17Jun2008 00:00 to 17Jun2008 5:42 (0.237500 Days) @ 1,250.00 USD per Average month | 9.76 | |
| BOD : 1,045.347 MT IFO @ 625.00 USD/MT Muscat | | 653,341.88 |
| BOD : 109.915 MT MDO @ 1,250.00 USD/MT Muscat | | 137,393.75 |
| BOR : 1,064.710 MT IFO @ 625.00 USD/MT FangCheng | 665,443.75 | |

Continued...

 NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD.

8 Temasek Boulevard, #37-03 Suntec Tower Three Singapore 038988

| | | |
|---|---:|---:|
| BOR : 106.360 MT MDO @ 1,250.00 USD/MT FangCheng | 132,950.00 | |
| Lieu of cleaning : ILOHC voy-1 | | 4,500.00 |
| Surveys Reserve : ON HIRE SURVEY voy-1 | 140.50 | |
| Surveys Reserve : OFF HIRE SURVEY voy-1 | 400.00 | |
| Owners Disbursement Reserve : ESTIMATED OE voy-1 | 2,000.00 | |
| Net Debits / Credits | 852,960.73 | 953,180.05 |
| **BALANCE DUE TO OWNERS** | **100,219.32** | |
| | 953,180.05 | 953,180.05 |
| | | E.&O.E. |

REMITTANCE DATE : 1Jul2008

# Exhibit F

- Owns' banking details:

Danske Bank
Holmens Kanal 2-12
1092 Copenhagen K
Acct.no.:   3016574694
IBAN no.:   DK6330003016574694
SWIFT:     DABADKKK
Credit:    D/S NORDEN A/S
Corresponding bank:    Bank Of America, New York,
SWIFT:              BOFAUS3N
Ref: Nord Maru / NCS


FOR

1. A/C : NORTH CHINA SHIPPING(SINGAPORE) PTE.LTD.

2. DELY: DLOSP BOMBAY ATDNSHINC

3. LAY/CAN: 0001 HRS 28TH/JUNE- 2400 HRS 5TH/JULY, 2008

4. ROUTE/DUR : A TCT VIA SA(S),SB(S),SP(S) AAAA AWIWLVIA WC INDIA TO CHINA WITH IORE IN
BULK, DURATION ABT 30 DAYS WOG.

5. REDEL : DLOSP 1SP CHINA. ATDNSHINC

6. HIRE : USD 55,000 DIOT, PAYABLE EVERY 15 DAYS IN ADVANCE

7. PAYMENT: 1ST HIRE AND AND BUNKER VALUE TO REACH SPORE TB PAYED AFT 3 BKG DAYS
AFTER
VSL'S DELY. CHTRS ARE ENTITLED TO DEDUCT BUNKER VALUE FROM LAST SUFFICIENT HIRE
PAYMENTS .

8. CHARTERERS HAVE THE LIBERTY TO REDELIVER THE VESSEL WITH UNCLEAN
HOLDS PAYING THE OWRS A LUMPSUM OF USD 4,500 IN LIEU OF CLEANING
INCLUDING REMOVAL/DISPOSAL OF DUNNAGE WHICH TO BE FOR OWRS TIME AND
EXPENSE.HOWEVER ALWAYS UNDERSTOOD THAT CHARTERERS ARE TO REMOVE
DUNNAGE FROM HOLDS AND PLACE SAME ON DECK AT THEIR
TIME/RISK/EXPENSE.

9. C/V/E : CHRS TO PAY USD1,250 PMPR

10.BOD ABT 500-600MT IFO AND ABT 30-35 MT MDO.
BOR ABT THE SAME QTTY AS BOD. BUNKER PIRCE USD 650 IFO AND
USD 1300 MDO BOTH END.

11. VSL'S HOLD CONDTION ON VSL'S DELY TO BE CLEAN SWEPT SO AS TO RECEIVE CHTRS  CARGOES
IN ALL RESPECTS,
FREE OF SALT, RUST LOOSE SCALES, AND PREVIOUS CARGO RESIDUE TO THE SATISFACTION
OF INDEPEDENT ON-HIRE SURVEYORS. IN CASE VSL HOLDS FAIL TO PASS, THEN VSL SHOULD BE
PLACED
OFF-HIRE FROM TIME OF SUCH FAILURE UNTIL VSL PASS THE SAME INSPECTION SATISFACTORY
AND ANY DIRECTLY RELATED EXPS/TIME INCURRED THERBY TO BE FOR OWNERS ACCT.

IN CASE VSL COMMENCED LOADING ON THE PASSED HOLDS THEN VSL TO BE
OFF-HIRE ON PRORATA BSS.

12 IF ORIGINAL BILLS OF LADING DONOT ARRIVE AT DISCHARGING PORT IN TIME, OWNERS/MASTER
TO RELEASE ENTIRE CARGO AGAINST CHARTERERS ISSUEING A LETTER OF INDEMNITY ON
CHARTERERS LETTERHEAD WITH WORDING OF OWNER'S PNI APPROVED FORM SIGNED BY A NAMED
DIRECTOR OF CHARTERERS. OWNERS TO RECEIVE WITHIN OFFICE HOURS BY FAX THE SIGNED
LETTER OF INDEMNITY PLUS COPY BILLS OF LADING. ( WORDING AS PER BTB CP)

13.GA+ARBTN LDN. ENGLISH LAW TO APPLY.

14. 3.75 PCT ADDCOMM PLUS 1.25 PCT TO BROMAR MARITIME SHANGHAI

15. OTHERWISE AS PER OWNERS BTB CP AS ATTACHED WITH LOGICAL AMENDMENTS AND BELOW ALTERATIONS:

- cl4 line del chtrs notice :"60/45/25 days redly notice";

- cl21 delete all, read as:" No drydocking except in case of emergency:

=END=


Best Regards

Bromar Handy/Handymax Team

Steve, Liang HaiHao
Dir 86-21-33926053
Mob: 86+ 13818059816
MSN  Liangsteve@hotmail.com

OWRS KINDLY FILL OUT CHTRS QUESTIONNAIRE ASF:

1) NAME OF VESSEL/FLAG : M.V. NORD MARU / PANAMA
2) EX NAME :  N/A
3) REGISTERED OWNERS :  T. G. LINE  S.A.
4) DISPONENT OWNERS :  TAGASHIRA KAIUN CO., LTD.
5) WHEN/WHERE BUILT :  2006  /  NAGASAKI, JAPAN
6) CLASSIFICATION SOCIETY :  NKK
   SPECIAL SURVEY PASSED :  STATUTORY SAFETY EQUIPMENT
   DATE OF LAST DRYDOCK :  N/A
7) OWNERS WARRANT THAT ALL CERTIFICATES, INCLUDING NATIONAL AND
   INTERNATIONAL REMAIN VALID FOR THE DURATION OF THE INTENDED
   VOYAGE, INCLUDING ALL NECESSARY NAVIGATIONAL AIDS AND UP TO CHRS
   FOR THE INTENDED TRADING AREAS.
8) CALL SIGN/IMO NUM :  3EDT5  /  0284491
9) INMARSAT C :  437171510
10) H AND M VALUE :  USD 25,000,000
11) P AND I CLUB :  THE JAPAN SHIP OWNERS' MUTUAL PROTECTION &
                    INDEMNITY ASSOCIATION
12) NAME OF MASTER/NATIONALITY : MARIO LUIS ABESIA / PHILIPPINES
13) NO. OF OFFICERS/CREW :  8 OFFICERS INCL MASTER  /  12 CREW
14) NATIONALITY :  PHILIPPINES
15) DWT (MT) : 55,745  MT.
    GRT/NRT : 30,684  /  18,492
16) DRAFT (SSW) :  12.502  M
    TPC :  56.01
17) LOA :  189.99  M
    BEAM :  32.26  M
    CONSTANT:  250 MT
    FW:  ?
18) HOLDS/HATCHES :  FIVE(5)HOLDS/HATCHES

| DIMENSIONS OF HATCHES : HOLD | No. | | L | | B |
|---|---|---|---|---|---|
| | 1 | = | 16.740 M | x | 18.600 M |
| | 2 | = | 22.320 M | x | 18.600 M |
| | 3 | = | 18.600 M | x | 18.600 M |
| | 4 | = | 21.390 M | x | 18.600 M |
| | 5 | = | 22.320 M | x | 18.600 M |

19) DISTANCE FROM HATCH COAMING TO SHIPS SIDE :  21'-05"
20) TANKTOP STRENGTH :  CH 1 = 24.5 MT/SQ.M ,   CH 2 = 15.5 MT/SQ.M
    CH 3 = 26.9 MT/SQ.M ,   CH 4 = 15.5 MT/SQ.M ,   CH 5 = 22.8 MT/SQ.M

| 21) GRAIN CAP : | NO. | | HO:D | HATCH | | TOTAL | |
|---|---|---|---|---|---|---|---|
| | CH 1 | = | 10,841 cu.m | 309 | cu.m | 11,150 | cu.m |
| | CH 2 | = | 15,854 | 468 | | 16,322 | |
| | CH 3 | = | 13,636 | 424 | | 14,060 | |
| | CH 4 | = | 14,402 | 487 | | 14,889 | |
| | CH 5 | = | 12,943 | 508 | | 13,451 | |
| | TOTAL | = | 67,676 | 2,196 | | 69,872 | |

22) TYPE OF HATCHCOVERS :   MCGREGOR / FOLDING TYPE

23) CRANE/GRABS (PLS ADV DETAILS OF CRANS, INCLUDING POWER TO GRABS AND OUT REACH ):

CRANE      :     FOUR(4)SETS

HOISTING LOAD  :  294 / 176.4 / 58.8   Kn   (30 / 18 / 6   Metric Tons

Hoisting speed          :   19 / 26 / 56 m/min

Lowering Speed        :   Abt 48 m/min at rated load

Slewing Radius         :   Max 26.0 m   /   Min   4.0 m

Slewing Speed          :   Abt. 0.6 rpm

Slewing Angle           :   360 Deg. Endless

Luffing time              :   Abt. 55 sec. (Max to Min Radius)

Hoisting ht.              :    Abt. 35.0 m (At Min Radius)

GRABS  :   FOUR(4) SETS

DWT  =  8,600   KG           OUTPUT  :  44   Kw

CAP  =  6.0 ~ 12.0   Cu.M.     VOLTAGE :   440   V

SWL  =  15,000   KG           FREQ.    :  60   Hz


CRANES/GRABS IS SUITABLE FOR IRON ORE LOADING:   YES

24) LAST 3 CARGOES/PORTS : IRON ORE PELLETS / MORMUGAO, INDIA

IRON ORE FINE   /   VISAKHAPATNAM, INDIA

MANGANESE ORE / OWENDO, GABON


25) LAST CALL TO AUSTRALIA/PORT(S) :  11 -  19   JUNE   2006

26) ANY ACCIDENTS/COLLISION/GROUNDING DURING PAST 12 MONTHS. IF SO

SAME TO BE LISTED :    NIL

27) OWNERS WARRANT THAT THEY ARE FAMILIAR WITH AUSTRALIAN GOVERNMENT/

PORT STATE REQUIREMENTS FOR TRADING AUSTRALIA/WHEAT/BARLEY

CARGOES AND ARE AWARE THAT THE VESSEL WILL BE INSPECTED BY SUCH

AUTHORITIES UPON ARRIVAL IN AUSTRALIA.

28) OWNERS CONFIRM VESSEL IS ISM CERTIFIED.   YES

29) OWNS CONFIRM THAT, IF REQUIRED, VSL CAN MAINTAIN MAX 13M WLTHC

THROUGHOUT LOADING BASIS ONE LOADING ARM :   BALLASTED CH 3

30) OWNERS CONFIRM THAT IF LOADING MADRAS VSL'S ARRIVAL DRAFT AT

LOAD PORT WILL BE MIN 19FT FORE AND 24FT AFT

31) VSL'S FO/DO/FW TANK CAPACITIES :   FO 1 = 562 MT, FO 2 = 615 MT, FO 3 = 463

DO = 137 MT, FW(P)= 174 / (S) = 174 MT.

32) OWNERS CONFIRM VSL FULLY CLASSED AND WILL REMAIN SO CLASSED

DURING THE PERIOD OF CHARTER.

33) VSL STRENGTHENED FOR HEAVY CARGO AND CLASSED FOR ALTERNATE HOLD

LOADING   :  HOLD 2 & 4 EMPTY

34)  OWRS BANK DETAILS ACCT FOR RECEIVING CHARTERHIRE : REVERTING

# Exhibit G

# NCS

## NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD.

8 Temasek Boulevard, #37-03 Suntec Tower Three Singapore 038988

NORDEN A/S

| | |
|---|---|
| Statement Date | : 16Jul2008 |
| Statement No | : 13817 |
| Our Reference | : SPM08F007 |
| Payment No. | : 2 |

### HIRE STATEMENT

| | |
|---|---|
| C/P Date: | 27Jun2008 |
| Vessel: | Nord Maru |
| Charterer: | North China Shipping (Singapore) PTE. LTD. |

NOTE ALL VALUES ARE IN USD

| | DR | CR |
|---|---|---|
| Charter Hire 13Jul2008 4:05 to 20Jul2008 4:05 (7.000000 Days) @ $5,000.00 USD Daily | | 385,000.00 |
| Address Commission of 3.750% | 14,437.50 | |
| Collect Commission of 1.250% | 4,812.50 | |
| CVE 13Jul2008 4:05 to 20Jul2008 4:05 (7.000000 Days) @ 1,250.00 USD per Average month | | 287.67 |
| Credit Previous : BOD, 698,050 MT, BOR: 371,050 MT Estimated Consumption : 225.000 MT IFO @ 650.00 USD/MT | 146,250.00 | |
| Net Debits / Credits | 165,500.00 | 385,287.67 |
| BALANCE DUE TO OWNERS | 219,787.67 | 385,287.67 |
| | 385,287.67 | 385,287.67 |
| | | E.&O.E. |

REMITTANCE DATE: 13Jul2008

---

## TELEGRAPHIC TRANSFER APPLICATION FORM 電匯申請書

HSBC (銀行) '08 JUL 16 15:10

BANK OF AMERICA, NEW YORK

SWIFT: BOFAUS3N

DANSKE BANK, HOLMENS KANAL 2-12 1092 COPENHAGEN K, DENMARK

SWIFT: DABADKKK

3016574694 / DK6330000301574694

Name of Beneficiary 受益人姓名
DAMPSKIBSSELSKABET NORDEN A/S,

MV NORD MARU 2ND HIRE

Name of Applicant 申請人姓名
NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD.

808-384630-838

USD

USD

USD *219,787.67

16-Jul-2008

# Exhibit H



# NCS

## NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD.

8 Temasek Boulevard, #37-03 Suntec Tower Three Singapore 038988

NORDEN A/S

| | |
|---|---|
| Statement Date | : 15Jul2008 |
| Statement No | : 13817 |
| Our Reference | : SPM08F007 |
| Payment No. | : 2 |

### HIRE STATEMENT

| C/P Date: | 27Jun2008 |
|---|---|
| Vessel: | Nord Maru |
| Charterer: | North China Shipping (Singapore) PTE. LTD. |

| NOTE ALL VALUES ARE IN USD | DR | CR |
|---|---|---|
| Charter Hire: 13Jul2008 4:05 to 20Jul2008 4:05 (7.000000 Days) @ 55,000.00 USD Daily | | 385,000.00 |
| Address Commission of 3.750% | 14,437.50 | |
| Collect Commission of 1.250% | 4,812.50 | |
| CVE: 13Jul2008 4:05 to 20Jul2008 4:05 (7.000000 Days) @ 1,250.00 USD per Average month | | 287.67 |
| Credit Previous : BOD: 596.050 MT; BOR: 371.050 MT | 146,250.00 | |
| Estimated Consumption : 225.000 MT IFO @ 650.00 USD/MT | | |
| Net Debits / Credits | 165,500.00 | 385,287.67 |
| BALANCE DUE TO OWNERS | 219,787.67 / | |
| | 385,287.67 | 385,287.67 |
| | | E.&O.E. |

REMITTANCE DATE : 13Jul2008

## HIRE STATEMENT

| MESSRS: | : DAMPSKIBSSELSKABET 'NORDEN' A/S | | DATE: | 14-Jul-08 |
| | | | REF NO. | SPM08F007 |

| RE | : NORD MARU | | C/P DATED | 23/4/2008 | |
| PERIOD | : DLY | | 28-Jun-08 | 4:05 GMT | MUMBAI |
| | TO | : | 20-Jul-08 | 4:05 GMT | |
| DAILY HIRE | : | | $55,000.00 DAILY INCLOT | | |
| BUNKER PRICE | : IFO | | $650.00 | | |
| | : MDO | | $1,300.00 | | |

Currency : USD

| PARTICULAR | | | | | DR | CR |
|---|---|---|---|---|---|---|
| 1 HIRE | | | | | | |
| | 22.000000 | DAYS | X | $55,000.00 DAILY | | 1,210,000.00 |
| 2 B.B. | | | | | | - |
| 3 OFF-HIRE | | | | | | |
| | | DAY | X | $55,000.00 DAILY | | - |
| 4 TIME LOSS | | | | | | |
| | | DAY | X | $55,000.00 DAILY | | - |
| 5 COMM | | | | 3.750% | 45,375.00 | |
| 6 BROKAGE COLLECT FROM US | | | | 1.250% | 15,125.00 | |
| 7 BOD | | | | | | |
| IFO | | 596.050 MT | X | $650.00 | | 387,432.50 |
| MDO | | 33.370 MT | X | $1,300.00 | | 43,381.00 |
| 8 C/V/E | | | | $1,250.00 | | 904.11 |
| 9 ILOHC | | | | $4,500.00 | | |
| 10 EST. BOR | | | | | | |
| IFO | | 596.050 MT | X | $650.00 | 387,432.50 | |
| MDO | | 33.370 MT | X | $1,300.00 | 43,381.00 | |
| 11 BUNKER CONSUMED DURING OFF-HIRE | | | | | | |
| IFO | | MT | X | $650.00 | - | |
| MDO | | MT | X | $1,300.00 | - | |
| 12 OVERCONSUMPTION AS PER WNI PERFORMANCE REPORT | | | | | | |
| IFO | | MT | X | $650.00 | - | |
| MDO | | MT | X | $1,300.00 | - | |
| 13 NON-COMPULSORY PILOTAGE | | | | | | |
| 14 ESTIMATED OWNERS EXPENSES | | | | | | |
| 15 ON-HIRE SURVEY FEE AT CHTRS PART | | | | | | |
| 16 OFF-HIRE SURVEY FEE AT OWRS PART | | | | | | |
| 17 1ST HIRE PAID ON | | 2/7/2008 | | | 930,616.44 | |
| 2ND HIRE PAID ON | | 16/7/2008 | | | | |
| SUB TOTAL | | | | | 1,421,929.94 | 1,641,717.61 |
| BALANCE DUE TO OWRS | | | | | 219,787.67 | |
| GRAND TOTAL | | | | | 1,641,717.61 | 1,641,717.61 |

| KINDLY REMIT ABOVE AMOUNT TO THE OWNERS FOLLOWING ACCOUNT: |
|---|
| AS ATTACHED |
| BANK : |
| BANK ADDRESS |
| : |
| SWIFT CODE : |
| A/C NO. : |
| FED ABA NO : |
| BENEFICIARY |
| |
| SWIFT : |
| ABA NO. : |
| IFO : |
| MSG : NORD MARU        SPM08F007   2ND HIRE |

# Exhibit I

b頁 1 - 2(B)

Richard Xu

寄件者: "Michele Grasso" <capes@ifchor.ch>
收件者: <cape@northchina.com.hk>
傳送日期: Friday, June 20, 2008 4:59 PM
主旨: aa..kyla fortune/ncs

*to answers*

Doc-No. 5068331 20/JUN/2008 10:49 h MG

to swissmarine att chris
to ncl att richard

ref kyla fortune / ncl
--

plsed to confirm having fxd clean asf

cp to be dated lausanne 20 june 2008

MV 'KYLA FORTUNE'
2001 CLASSED - LRS
170,726 MTS ON 17.773 M
188,946 CUB.M
LOA 288.97 M  BEAM 45.00 M
GT/NT - 86743/56317
TPC - 118.42
ABT 14 K ON ABT 54 MTS LADEN
ABT 15 K ON ABT 50 MTS BALLAST ALL PLUS ABT 3 MTS FUEL OIL FOR AUXILIARIES
IN PORT CONSUMPTION ABT 4.0 MTS PER DAY PLUS ABT 1 MT FOR EACH
BALLASTING/DEBALLASTING
ALL DETAILS ABT

for a/c North China Shipping (Singapore) Pte Ltd

-160'000mts 10pct moloo iore / iore pellets / iore concentrates always excl dri / drip / hbi / sponge iron . cgo always.loaded carried and discharged in accordance with latest imo recomendations.
-l/c 4/13 july 2008 bss s brazil
    1/10 july 2008 bss PDM
-load port: 1sp 1sb tubarao or chopt git or chop itaguai, brazil
tubarao: scale 40 consecutive hours for the first 120,000 wet metric  tons loaded then additional one     hour each
extra 5,000 wet metric    tons loaded weather permitting per weather working day Sundays  and    holidays
included  with 12 hours turn time, unless sooner commenced actual time used to count.
git/itaguai: 50000mts pwwd shinc + 12 hrs tt usc
-disch port: 1sp 1-2sbs qingdao
30000mts pwwd shinc + 24hrs tt usc
-frt usd 85.00pmt fiot bss tubarao/qingdao
    usd 88.35pmt fiot bss git/qingdao
    usd 91.75pmt fiot bss itaguai/qingdao
-chtrs have option to load at others ports in bazil / discharge ports in prc and frt to be calculated on open book bss on
same tc earning of performing vsl for tub/qd without repositioning.
-dem 210,000pdpr hdltsbe
-chtrs' agent bends
-lumpsum usd 90000/120000 p/e for ows acc in prc for 1/2 disport in prc
-3.75% adc + 1.25% ifchor capes on f/d/d
-owise as per hebei dragon/ncs cp dated 22 oct 2007 logically amended as per m/t agreed
end

thks vm both parties  *95% 4 BDS 之唛*

6/23/2008

b頁 2 - 2(B)

plse provide copy of hebei dragon cp order to enable us to draw relevant cp

best regards


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IFCHOR GROUP SA, Place Pépinet 1, 1003 Lausanne, Switzerland
as brokers only

capes@ifchor.ch - panamax@ifchor.ch - handy@ifchor.ch
securities@ifchor.ch - operations@ifchor.ch - capesops@ifchor.ch
            www.ifchor.com

Phone: +41 21 310.31.31 - Fax: +41 21 310.31.00/01
   Tlx: 450 351 IFC CH -  450 352 IFOPS CH

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

6/23/2008

# Exhibit J

To 致 : The Hongkong and Shanghai Banking Corporation Limited
香港上海滙豐銀行有限公司

Customer Receipt
客戶收據

Branch 分行

TELEGRAPHIC TRANSFER APPLICATION FORM 電匯申請書

Note 注意: 1. Please complete in Block Letters and tick where applicable. 請用正楷填寫及在適當的方格內加「✓」號。
2. Fields printed in RED must be completed (Please refer to the sample printed on the reverse of the final copy if necessary). 紅色印字之欄目必須填寫(如有需要，請參閱尾頁背面的樣本)。
3. Please refer to the conditions printed overleaf. 請參閱背面之條款。
4. For Integrated Business/Vantage Account, please specify Account Type. For Foreign Currency Account, please specify Currency to be debited. 綜合理財/智醒理財戶口，請註明戶口種類。外幣戶口請註明支賬貨幣。
5. Please ensure that all information below given is clear and complete as any incomplete or insufficient information given may result in this telegraphic transfer being delayed or not being processed. 請確保下列資料清楚及齊全，否則本電匯可能因資料不齊或不清而被延誤或不能辦理。

Date 日期 | 17-Jul-2008
day 日 | month 月 | year 年

For Bank Use Only 銀行專用

**Currency to be Remitted** 匯出貨幣
USD

**Amount of Remittance** (Please fill in the amount immediately after 請填寫即時支付之金額) **HKD**

**Amount in Foreign Currency** 匯出外幣 OR 或 **Amount in HK Dollars** 港幣金額
*13,227,052.61

TT Reference No.
TT

Name and Address of Intermediary Bank 中間人銀行名稱及地址 (If specified, payment will be paid to the Beneficiary Bank through the Intermediary Bank 如已列明，款項將透過中間人銀行付予收款銀行)

Account No. with Intermediary Bank 於中間人銀行之戶口號碼：

BIC / Name and Address of Beneficiary Bank (For Euro payment to EU and EEA, BIC should be provided) 收款銀行BIC之名稱及地址 (如屬歐羅並付予歐盟及歐洲經濟區，必須提供BIC)

NORDEA BANK FINLAND PLC, LONDON BRANCH CITY PLACE HOUSE, 55 BASINGHALL STREET, UK - LONDON EC2V 5NB UNITED KINGDOM SWIFT: NDEAGB2L

Authorised Signature 授權簽署

641

City | Province (for mainland China only) 省 (只適用於中國內地) | Country 國家

To facilitate Money Transfers to your Beneficiaries in the UK or the USA in a more efficient way, please fill in the following: 為加速將款項更有效率地轉至英國或美國之收款人，請填寫以下各項：
For UK Transfers 英國轉賬: Bank Sorting Code 分類號碼 ____
For USA Transfers 美國轉賬: ○ UID No. [For Transfers via New York CHIPS (Clearing House Interbank Payment System)] [經由紐約CHIPS轉賬之號碼]
○ Fedwire Routing No. 號碼 ____

Name of Beneficiary 收款人姓名

SWISSMARINE SERVICES SA, GENEVA, SWITZERLAND

Beneficiary Account No. (Please state address of beneficiary if beneficiary bank is not specified) / IBAN (for Euro payment to EU and EEA, IBAN should be provided) 收款人戶口號碼 (如沒有列明收款銀行，請列出收款人地址) / IBAN (如屬歐羅並付予歐盟及歐洲經濟區，必須提供IBAN)

0042228601-USD / GB77NDEA40487842228601

Message or Instruction (if any) to 附言或指示 (如有) 予 | ☒ Beneficiary 收款人 | ☐ Beneficiary Bank 收款銀行
MV KYLA FORTUNE 95% FREIGHT

Name of Applicant 申請人姓名

NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD
Tel. No. 電話號碼 31842000

Plate/Rate Category
牌價/匯率類別

Payment should be settled by 付款方式
☒ debiting from a/c 賬戶 Account No. 戶口號碼 808-384630-838 Currency 貨幣 USD Account Type 戶口種類
☐ others 其他 :

Rate Given by
匯率提供人

**Charges** 費用
Please debit the charges according to the following options 請根據下列選擇扣除費用：
☐ Remitter pay local and beneficiary pay overseas charges 本人支付本地費用，收款人支付海外費用
☐ Local and overseas charges deduct from amount remitted 本地及海外費用於匯款中扣除
☒ Remitter pay local and request to pay overseas charges [Please refer to clause (3) printed overleaf] 本人支付本地費用並要求支付海外費用 [請參閱背面之條款(3)]
If the charges are to be debited from other account, please specify 如費用需從其他戶口扣除，請註明 :
Account No. 戶口號碼 808-384630-838 Currency 貨幣 USD Account Type 戶口種類

Special Instruction(s) (if applicable) 特別指示 (如適用)
**Specific Processing Date** (The payment is to be debited to a/c on the specified day) 特定處理日期 (款項將於指定日扣除)

I/We have read the conditions printed overleaf and agree to be bound by them. 本人 (等) 已閱讀並同意背面印列之條款。

# Exhibit K



# NCS

**NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD.**

8 Temasek Boulevard, #37-03 Suntec Tower Three Singapore 038988

Swiss Marine Services Sa Geneva

| | |
|---|---|
| Statement Date | 16Jul2008 |
| Statement No | 13868 |
| Our Reference | SPM08C011 |
| Payment No. | 1 |

| **FREIGHT CREDIT** | | |
|---|---|---|
| C/P Date: | 20Jun2008 | Voyage no.: | 20080047 |
| Vessel: | Kyla Fortune | | |
| Charterer: | North China Shipping (Singapore) PTE. LTD. | | |
| Printed Date: | 16Jul2008 16:22 | Printed By: | ZXL |
| Fixture Ref.: | 2008/629 | | |

Note all values are in USD

Load: Iron Ore at Itagual, 159,063MT on 11Jul2008 as per BL
Discharge: at QingDao
Total BL Quantity : 159,063MT
CP Minimum    : 160,000.000MT 10% MOLOO
95% of Freight : 159,063.000MT @ 91.75 USD/MT                                          13,864,328.74
   Address Commission of 3.750% on 100% Freight (USD 14,594,030.25)      -547,276.13

Compensation : disport d/a lumpsum bss 1disport in prc voy-20080047                        -90,000.00
TOTAL                                                                                    13,227,052.61

E. & O. E.

REMITTANCE DATE : 17Jul2008

# Exhibit L

## FEOPS-THOMSON

寄件者:    "R.S.Platou (Asia) Pte Ltd" <dry@platou.com.sg>
收件者:    <dry@platou.com.sg>
傳送日期:    Thursday, 26 June, 2008 22:40
附加檔案:    jub levan.doc; JBU Levan CP 9 Oct 07.doc
主旨:    M/V JBU LEVAN/NCS - CP DATED 26TH JUN 2008

Ref: 260608-LZ036318 - R.S.Platou Singapore, Dry Cargo Chartering Department.


TO : KOREA LINE SPORE     - MR B.H. KIM PLSE
TO : NORTH CHINA SHIPPING - MR GENS NIU PLSE
FM : R.S.PLATOU ASIA

RE: M/V JBU LEVAN/NCS
================================================================================
PLEASED TO CLEAN FIXTURE RECAP WITH CP DATED 26TH JUNE 2008:

MV JBU LEVAN
B/C DOUBLE SKIN - BUILT 2006
DWT 53,588 MTS ON 12.49 MTRS SSW - BAHAMAS FLAG LOA 190/BEAM 32.26 M TPC ON
SUMMER DRAFT 56,386 MT
5 HO HA - CO2 FITTED IN HOLDS
65748.13 CBMGR/63628.83 CBMBL
4 X 36 MT CR / 4 X 13 CBM PEINER DUAL SCOOP GRABS ABT 14 KN ON ABT 29 MT
BALLAST/31 MT LADEN IFO 380 CST + 0,2 MT MDO IN PORT IDLE: ABT 2.8 MT IFO +
1.2 MT MDO
WORKING: ABT 5.0 MT IFO + 1.2 MT MDO
ALL DETS ABT


1  D/OWS : KOREA LINE (SINGAPORE) PTE LTD

2  CHTRS : NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD.

3  DELY RETRO SAILING MUNDRA 25TH JUNE 0615HRS LT

4  ONE TCT OF IRON ORE FROM INDIA TO CHINA TRADING VIA SPS SBS SAS

5  REDELY 1SP CHINA ATDNSHINC

6  HIRE USD53,000 DIOT PAYABLE 15 DAYS IN ADVANCE

7  PAYMENT: 1ST HIRE + EST. BUNKER CONSUMPTION TO SINGAPORE TB PAID W/IN TWO
BANKING
   DAYS AFTER VSL'S DELIVERY.

   CHRTS ARE ENTITLED TO DEDUCT AMOUNTS/VALUE OF OWNERS DISBURSEMENT
   AT PORTS OF CALL DURING THE CURRENCY OF THIS CP AS PER VOUCHERS.
   CHRTS TO PROVIDE AND SEND COPY OF VOUCHERS BY FAX TO OWNERS PRIOR
   DEDUCTING AMOUNTS FROM HIRE.
   CHRTS ARE ENTITLED TO DEDUCT FROM LAST HIRE VALUE OF BUNKERS ON DEL.
   IF LAST HIRE NOT SUFFICIENT, THEN BALANCE FROM PENULTIMATE HIRE.


8  ILOHC USD 5,500 EXCL DUNNAGE, LASHING MATERIALS REMOVAL/DISPOSAL,
   C/E/V USD 1,500 PMPR

9  BUNKER CL. - BOD/BOR ABT SAME QTY AS ON DELY
   BUNKERS ON DELY 390.2 MT IFO AND 70 MT MDO
   B/PRICES USD 630/1250 PMT FOR IFO/MDO, BENDS

10 3.75 PCT ACCOM TO CHRS + 0.625 PCT TO R.S. PLATOU ASIA.

11 OWISE AS PER OWRS' B-T-B HEAD C/P LOGICALLY AMENDED ONLY IN LINE WITH MAIN
TERMS
    RECAP
END RECAP

OWNERS' BANK DETAILS

- CORRESPONDENT BANK : JP MORGAN CHASE BANK NEW YORK
  SWIFT CODE : CHASUS33
- BENEFICIARY BANK : NORDEA BANK FINLAND PLC, SINGAPORE BRANCH
  SWIFT CODE : NDEASGSG
- ACCOUNT NUMBER : 503424 1981
- IN FAVOUR OF : KOREA LINE (SINGAPORE) PTE. LTD.
- REFERENCE : MV. JBU LEVAN
END

TRUST ABOVE IN LINE WITH YOUR NOTES. MANY THANKS FOR BOTH PARTIES VERY KIND
SUPPORT LEADING TO THIS FIXTURE.

Best Regards, Yahya Karahasan + Richard Li Zheng

R.S. Platou (Asia) Pte. Ltd.
Tel  : +65 6336 8733
Fax  : +65 6336 8741
Mob  : +65 9675 8640 /+65 9833 9592
Email: dry@platou.com.sg
Web  : www.platou.com

27/6/2008

# Exhibit M

香港上海滙豐銀行有限公司

Branch 分行 [ ] 107

**TELEGRAPHIC TRANSFER APPLICATION FORM 電滙申請書**

Note 注意: 1. Please complete in Block Letters and 用正階填寫 if applicable. 如屬適用, 請以正楷填寫.
2. Fields printed in 列印的 should be completed (Please refer to the sample printed on the reverse of the 3rd copy, if necessary 如有需要, 請參閱第三聯背面之樣本).
3. Please refer to the conditions printed overleaf. 請參閱背面之條款.
4. For Integrated Business/Savings Account, please specify Account Type. For Foreign Currency Account, please specify Currency to be debited. 綜合企業戶口/儲蓄戶口, 請註明戶口類別. 外幣戶口, 請註明扣賬幣.
5. Please ensure that all information below given is clear and complete or any incomplete or insufficient information given may result in this telegraphic transfer being delayed or not being processed. 請確保以下所填資料清晰及完整, 否則此電滙申請可能被延誤或不被處理.

Date 日期 : day 日 : month 月 : year 年  **15-Jul-2008**

| For Bank Use Only 銀行專用 |
|---|
| TT Reference No. T T |
| ✓ ✓ |

**Currency to be Remitted 滙款幣別**  USD

**Amount of Remittance (Please fill in the amount immediately after) 滙款金額 (請以下即時填上)** — (HKD*)

**Amount in Foreign Currency 外幣金額**  **USD 77,302.83**   OR 或   **Amount in HK Dollars 港幣金額**  HKD

**Name and Address of Intermediary Bank (If specified, payment will be paid to the Beneficiary Bank through the Intermediary Bank) 中轉銀行名稱及地址 (如有指定, 上述滙款將透過此中轉銀行滙給受款銀行)**

JP MORGAN CHASE BANK NEW YORK

SWIFT: CHASUS33

Account No. with Intermediary Bank 中轉銀行之賬戶號碼

**BIC / Name and Address of Beneficiary Bank (For Euro payment to EU and EEA, BIC should be provided) 受款銀行名稱及地址 (如滙款至歐盟及歐洲經濟區, 請提供受款銀行之BIC)**

NORDEA BANK FINLAND PLC, SINGAPORE BRANCH

SWIFT: NDEASGSG

City 市    Province (for mainland China only) 省 (只供中國國內用)    Country 國家

**To facilitate Money Transfers to your Beneficiaries in the UK or the USA in a more efficient way, please fill in the following:**
為能更有效地將滙款滙給你在英國或美國的受款人, 請填寫以下項目:

For UK Transfers 英國滙款 : Bank Sorting Code 分類代碼 :

For USA Transfers 美國滙款 : UID No. (For Transfers via New York CHIPS (Clearing House Interbank Payment System))
: Fedwire Routing No. 路線編號 :

| Authorised Signature 授權簽署 |
|---|
| [stamp] 6-41 |

**Name of Beneficiary 受款人姓名**

KOREA LINE (SINGAPORE) PTE LTD

**Beneficiary Account No. (Please state address of beneficiary if beneficiary bank is not specified) (IBAN (For Euro payment to EU and EEA, IBAN should be provided)) 受款人賬戶號碼 (如沒有指定受款銀行, 請填上受款人地址) (IBAN (如滙款至歐盟及歐洲經濟區, 請提供 IBAN))**

503424 1981

**Message or Instruction (if any) to 滙款訊息 (如有) 給**   X   Beneficiary 受款人   Beneficiary Bank 受款銀行

MV JBU LEVAN 2ND HIRE

**Name of Applicant 申請人姓名**

NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD     Tel. No. 電話號碼 31842000

**Payment should be settled by 付款方式**

X   debiting from 扣賬 Account 賬戶 **808-384630-838**   Currency 幣別 USD   Account Type 賬戶類別

others 其他 :

| Rate/Rate Category 滙率/滙率類別 |
|---|
| |
| Rate Given by 兌率提供人 |

**Charges 費用**
Please settle the charges according to the following options 請根據下列選項繳付有關費用:

Remitter pay local and beneficiary pay oversea charges 本人支付本地費用, 受款人支付海外費用

X   Remitter pay local and request to pay oversea charges [Please refer to clause (3) printed overleaf] 本人支付本地費用並要求支付海外費用 (請參閱背面第 (3) 項條款)

If the charges are to be debited from other account, please specify 有關費用如欲從其他賬戶扣除, 請填上:
Account No. 賬戶號碼 **808-384630-838**   Currency 幣別 USD   Account Type 賬戶類別

**Special Instruction(s) (if applicable) 特別指示 (如適用)**
Specific Processing Date (The payment is to be debited to my/our account on the specified date) 指定處理日期 (滙款將於指定日期從本人/我等之賬戶扣除)

I/We have read the conditions printed overleaf and agree to be bound by them. 本人 (等) 已閱讀並同意受背面所載條款所約束.

# Exhibit N



# NCS

## NORTH CHINA SHIPPING (SINGAPORE) PTE. LTD.

8 Temasek Boulevard, #37-03 Suntec Tower Three Singapore 038988

| Korea Line Corporation | | |
|---|---|---|
| | Statement Date | : 14Jul2008 |
| | Statement No | : Proforma |
| | Our Reference | : SPM08F008 |
| | Payment No. | : 3 |

### 2ND HIRE STATEMENT

| C/P Date: | 26Jun2008 |
|---|---|
| Vessel: | Jbu Lavan |
| Charterer: | North China Shipping (Singapore) PTE. LTD. |

| NOTE ALL VALUES ARE IN USD | DR | CR |
|---|---|---|
| Charter Hire: 10Jul2008 00:45 to 15Jul2008 00:45 (5.000000 Days) @ 53,000.00 USD Daily | | 265,000.00 |
| Address Commission of 3.750% | 9,937.50 | |
| Collect Commission of 0.625% | 1,656.25 | |
| CVE: 10Jul2008 00:45 to 15Jul2008 00:45 (5.000000 Days) @ 1,500.00 USD per Average month | | 246.58 |
| Credit Previous : BOD: 390.000 MT; BOR: 120.000 MT Estimated Consumption : 270.000 MT IFO @ 630.00 USD/MT | 170,100.00 | |
| Credit Previous : BOD: 70.000 MT; BOR: 65.000 MT Estimated Consumption : 5.000 MT MDO @ 1,250.00 USD/MT | 6,250.00 | |
| Net Debits / Credits | 187,943.75 | 265,246.58 |
| BALANCE DUE TO OWNERS | 77,302.83 ( | . |
| | 265,246.58 | 265,246.58 |
| | | E.&O.E. |

REMITTANCE DATE : 10Jul2008

CYB680624